# BAR ASSOCIATION OF BALTIMORE CITY *v.* MARSHALL

[Misc. Docket (Subtitle BV) No. 1, September Term, 1972.]

*Decided July 26, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*C. MacNair Speed* for petitioner.

*Michael E. Loney* for respondent.

DIGGES, J., delivered the opinion of the Court.

This is a disciplinary proceeding which was originally instituted in this Court under the provisions of Subtitle BV of Chapter 1100 of the Maryland Rules of Procedure. The petitioner, the Bar Association of Baltimore City, here seeks to have this Court impose appropriate sanctions against the respondent, M. Jack Marshall, a practicing attorney in Baltimore City, principally for alleged violations of Canons 1 and 9 of the Code of Professional Responsibility.[1] In addition, the petition alleged that in violation of Maryland Code (1957, 1964 Repl. Vol.), Art. 101, § 57 the respondent impermissibly collected his fee for professional services rendered to a claimant in a workmen's compensation case prior to the approval of the fee by the Workmen's

---

1. As we mentioned in footnote 1 of our opinion in Lusby v. Nethken, 262 Md. 584, 586, 278 A. 2d 552 (1971): "Maryland Rule 1230 (added 13 October 1970, effective 2 November 1970) adopted the American Bar Association's Code of Professional Responsibility (adopted by the House of Delegates of the American Bar Association on 12 August 1969). The Maryland State Bar Association adopted the same Code on 9 July 1970." The provisions of the new Code, as later quoted in this opinion, are not unlike those of old Canons 11 and 29 of the Canons of Professional Ethics. The Code of Professional Responsibility now appears in Appendix F of Vol. 9B of the Maryland Code (1957, 1971 Repl. Vol.) at page 1007 *et seq.*

We further note that in part Art. 10, § 16 of the Code (1957, 1968 Repl. Vol.) provides: "Every attorney who shall . . . be found guilty of professional misconduct, malpractice, fraud, deceit, crime involving moral turpitude, [or] conduct prejudicial to the administration of justice . . . shall, by order of the judges finding him guilty, be suspended or disbarred from the practice of his profession in this State."

Compensation Commission. Following the filing of the Bar Association's petition, this Court, pursuant to Rule BV3 b, directed that the proceedings be transferred to the Supreme Bench of Baltimore City for a hearing. We designated Judges J. Gilbert Prendergast, J. Harold Grady and Paul A. Dorf as the panel to conduct the hearing (Rule BV4) and submit to this Court their recommendation as to a proper disposition of the charges. Rule BV5. This three judge panel, in faithfully discharging its assigned responsibilities, conducted a full hearing on December 26, 1972 and then transmitted to this Court a complete record of the proceedings. This record, which contains the recommendation of the hearing court as to a proper disposition of the charges, includes, as a part thereof, a summation of the factual findings which constitute the judges' reasons for their recommendation. These reasons are as follows:

"In 1965 Robert P. Carter engaged the services of Mr. Marshall to represent him in a proceeding for compensation then pending before the Workmen's Compensation Commission of Maryland. The claimant had sustained an accidental injury while in the employ of Schluderberg-Kurdle Co., Inc., for which he was being paid compensation for his temporary total disability. A dispute arose as to the nature and extent of his permanent disability and as to whether he was entitled to compensation for a portion of such disability from the Subsequent Injury Fund. Following a hearing, a supplemental award of compensation was passed by the Commission on August 31, 1970 in which it determined that Mr. Carter was entitled to compensation for permanent partial disability in the aggregate amount of $6,875 and that he should receive an additional sum of $2,500 from the Subsequent Injury Fund. There was no appeal from that decision and it is not contended that Mr. Marshall did not represent his client with professional skill and competence in that matter.

Around the middle of September, 1970, [Marshall] and his client met and the latter was shown two checks payable to his order by his employer, one for $4,775, which he was then given, and the other for $2,344. The latter check was endorsed by its payee, Robert Carter, and then deposited by Mr. Marshall in the account of his firm. The parties agree that the amount of that check is almost precisely the fee which Mr. Marshall expected to recover ultimately, based on 20% of the compensation obtained. Whether defendant prevailed upon his client to endorse the check over as advance payment of the fee, in violation of Section 57 of Article 101 of the Maryland Code, is not certain, but the court finds that Mr. Marshall received funds belonging to his client at that time and proceeded to deposit them to his own account, contrary to the provisions of the Canon. The court does not believe Mr. Marshall's contention that his client made a loan of the $2,344 to him.

Thereafter, Mr. Marshall filed a petition addressed to the Workmen's Compensation Commission for a fee and the payment of certain medical expenses of three physicians. In applying for the fee, he requested the exact amount that he had already obtained from the client, $2,344. The Commission awarded him only $2,100, but he was later paid an additional $10 by the Subsequent Injury Fund — a total of $2,110 as fee. The check from the employer for the fee is dated December 23, 1970 and was received and deposited by Mr. Marshall early in January, 1971. At the bottom of the petition for the fee, defendant wrote out in his own handwriting:

'It is agreed and understood that the $2,344.00 to be received by M. Jack Marshall is to be turned over to Robert P. Carter.

M. Jack Marshall'

Upon being paid the fee at the end of December, 1970, defendant was then holding $4,454 in his personal account of which he was entitled to only $2,110 as fee. Despite the persistent and vigorous demands of his client for the payment of the funds belonging to him, Mr. Marshall declined to make any payment to him.

Finally, on March 10, 1971, Mr. Carter filed a formal complaint with the Bar Association of Baltimore City against Mr. Marshall. The complaint was heard before the Grievance Committee of the Association on November 5 of that year and the following day Mr. Marshall made his first effort to pay the money he owed his client when he issued his personal check to Carter in the amount of $250. At the time of the hearing before this court, he had paid a total of $1450 in more or less regular monthly instalments of $100 each and he has subsequently paid off the balance in full, following the hearing today, with interest. At least this court was so informed by counsel just before the recommendation was announced.

The court concludes that Mr. Marshall improperly took the funds of his client, deposited them with his own instead of holding them in an escrow account of the client, and unreasonably and improperly refused to pay over the money belonging to his client until finally compelled to do so, beginning at the time of the hearing before the Grievance Committee, and terminating with the hearing today. It is the opinion of this court that this conduct merits suspension from practice for one year."

Accompanying this factual determination was the recommendation of the hearing court concerning disposition of the charges. It reads:

"It is recommended that the Court of Appeals of Maryland adjudge M. Jack Marshall to be guilty of

> professional misconduct in that he violated Canon 9 and, specifically, Disciplinary Rule 9-102 of the Code of Professional Responsibility. It is further recommended that he be suspended from the practice of law for the period of one year."

When the record of the proceedings conducted in the hearing court arrived here, neither party filed exceptions to the recommendation, as authorized by Rule BV5 b 2. Nevertheless, considering the magnitude of the breach of ethics which was both explicitly and implicitly factually determined by the hearing court to have been committed, we issued an order directing the respondent to show cause why he should not be disbarred from the further practice of law in this State. Marshall, in responding to that order, controverted only the panel's unfavorable answer to him on the crucial question of whether he was authorized, as the recipient of a loan from his client, to expend the funds which are the subject of this dispute for his personal use. This is consistent with the position Marshall advanced in the hearing court. And, in this Court, though originally filing no exceptions, he asserts, as we conclude he had a procedural right to do, "that the trial court erred in its finding of the fact that M. Jack Marshall did not borrow funds from his client" and "that the facts as determined by the trial court indicate an absence of fraudulent intent on the part of M. Jack Marshall." Implicit in this answer is an admission by the respondent that he commingled with his personal funds and used for his own benefit the $2,344 portion of Carter's award as well as the $2,110 fee referred to in the trial panel's findings of fact. The evidence which supports respondent's claim of a loan is specifically controverted by Carter's testimony.

This conflict presents a question for determination initially by the hearing panel and then by this Court. The hearing court, as already noted, stated that it: "[did] not believe Mr. Marshall's contention that his client made a loan of the $2,344 to him." In resolving this conflict in the testimony, we consider the findings of fact of the hearing

court in support of its recommendation to have, before us, a similar force and effect to those contained in a master's report in equity. *See In Re Member of Bar*, 226 A. 2d 705 (Del. 1967). Previous opinions of this Court have discussed the importance to be attached to the findings of fact in a master's report by the ultimate trier of fact. In those cases we have said that although the report is only advisory, the court should give full consideration to it, particularly with respect to the credibility of witnesses, where the testimony is conflicting. And, the master's findings of fact from the evidence are prima facie correct and they will not be disturbed unless determined to be clearly erroneous. *Bris Realty v. Phoenix*, 238 Md. 84, 89, 208 A. 2d 68 (1965); *Alexander v. Hergenroeder*, 226 Md. 559, 560, 174 A. 2d 580 (1961); *Pinkston, Tr. v. Higham*, 224 Md. 513, 522, 168 A. 2d 712 (1961); *Maryland Lumber Co. v. White*, 205 Md. 180, 196, 107 A. 2d 73 (1954).

As this is an original proceeding filed in this Court, we made an independent, detailed review of the complete record with particular reference to the evidence relating to the disputed factual finding. From that review, we conclude that the entire factual findings of the hearing court are supported by clear and convincing evidence, which we determine to be the proper test to be applied, both by the hearing panel and this Court, in disciplinary proceedings instituted under the BV Rules. *Cf. In Re Diener and Broccolino*, 268 Md. 659, 304 A. 2d 587 (1973). Accordingly, we adopt the hearing court's findings of fact as our own. And, with this adoption, it is plain to us that there is no escape from the conclusion that the respondent violated not only Canon 9 and DR 9-102 as found by the hearing court, but also Canon 1 and DR 1-102 (A)(3) and (4). Those canons and their relevant accompanying disciplinary rules provide:

CANON 1 *A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession*

DR 1-102 Misconduct.

(A) A lawyer shall not:

\* \* \*

   (3) Engage in illegal conduct involving moral turpitude.

   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

CANON 9 *A Lawyer Should Avoid Even the Appearance of Professional Impropriety*

  DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows: (exceptions not pertinent)

\* \* \*

(B) A lawyer shall:

\* \* \*

   (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

As we noted earlier, the hearing court, after finding that the respondent engaged in unprofessional conduct in violation of Canon 9 and its Disciplinary Rule 9-102, recommended that he be suspended from the practice of law for one year. But, from the facts found by the hearing court and adopted by us, we conclude that Marshall's actions violated more than just that Canon. We think it is obvious that by his actions Marshall has also breached the more

serious responsibilities prescribed by Canon 1 and its Disciplinary Rules 1-102 (A)(3) and (4). The force of the violation of these disciplinary rules accompanying Canon 1 strikes a fatal blow to the respondent's moral fitness to continue in the practice of law. In light of this, we have decided that we cannot accept the recommendation of the hearing court; rather the extreme sanction of disbarment must be imposed. (For scope of review by this Court in disciplinary proceedings and finality of our decision see Rule BV5 b 4 and 5.) In doing so, we recognize that the power of a court to disbar an attorney should be exercised with extreme caution; but, there should be no pause in exercising that power when it is apparent that such action is required for the protection of the public.

The permission conferred by this Court to practice law in Maryland is a high privilege which is only granted to those persons who, after examination into both their knowledge of the law and their moral fitness, have proven themselves worthy. But, when a practitioner, through his actions, demonstrates a failure to maintain the high moral standards of the profession, by dishonestly appropriating his client's funds to his own use, we should not hesitate to withdraw the privilege of membership in the legal fraternity of this State. Lawyers in Maryland, acting through the organized bar, have with admirable zeal long acknowledged the need for a strict code of professional conduct prescribing the standards which should govern those granted the privilege of practicing the profession here. This vigilance is attributable to a recognition that a lawyer's duty is a high one which, because of the nature of the relationship that exists between an attorney and his client, embraces moral standards that are more stringent than those applicable to others. This duty, which is first assumed with the taking of the oath on admission to the bar, is not shed as long as one remains a member of the profession.

The relationship existing between an attorney and his client is one that of necessity requires mutual trust and confidence. It is of prime importance not only to the parties themselves, but also to lawyers as a group as well as to

society in general, that there be no lessening of the degree of confidence that the public has in the fidelity, honesty and integrity of members of the profession. It has been immemorially acknowledged that at the very heart of the attorney-client relationship is the trust concept with the attorney acting as a trustee for his client in all of his undertakings for him. This is especially true in the attorney's handling of moneys of others coming into his hands. So, it is essential that all members of the legal fraternity be strongly and constantly impressed with the truism that in handling moneys and properties belonging to their clients or others that they accept them in trust and are strictly accountable for their conduct in administering that trust, so they dare not appropriate those. funds and properties for their personal use. The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct. *Balliet v. Balto. Co. Bar Ass'n*, 259 Md. 474, 479, 270 A. 2d 465 (1970); *In the Matter of Lombard*, 242 Md. 202, 218 A. 2d 208 (1966); *In Re Williams*, 180 Md. 689, 23 A. 2d 7 (1941). The very administration of justice under our adversary system is dependent upon the ability of members of the public as well as the courts to rely on the integrity of counsel who handle the business affairs of their clients both in and out of the court. To this, we add that of no small concern to the general membership of the bar should be the fact that the standing in the community of the legal profession is frequently measured by the deviations of the dishonest few rather than by the standard of great devotion and honor which is set by the vast majority of members of the fraternity. It must be borne in mind that the purpose of disciplinary actions such as this is not to punish the offending attorney, as that function is performed in other types of legal proceedings, but it is to protect the public from one who has demonstrated his unworthiness to continue the practice of law. When this unworthiness is shown to be present, as we conclude it is here, it becomes our sad duty, but nonetheless our obligation, to withdraw the privilege to practice law

520

earlier granted by this Court. To fail to do so will impliedly represent to the public that the attorney continues to possess the basic qualities of honor traditionally associated with members of the bar of this State. We, therefore, conclude that when a member of the bar of this Court is found to have betrayed the high trust imposed in him by appropriating to his own use funds of others entrusted to him, as Marshall did, then, absent the most compelling extenuating circumstances, which we do not find to be present here, disbarment should follow as a matter of course. We further comment that the gravity of the respondent's conduct here has been aggravated in no small degree by the fact that his testimony concerning the receipt of the disputed funds as a loan is found to be unbelievable. Accordingly, the order to show cause will be made final and the name of the respondent, M. Jack Marshall, stricken from the rolls of those authorized to practice law in this State.

*It is so ordered.*