## THE BAR ASSOCIATION OF BALTIMORE CITY *v.* COCKRELL

[Misc. Docket (Subtitle BV) No. 10 (Second Panel), September Term, 1972.]

*Decided March 26, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Arthur G. Murphy, Sr.*, with whom was *Tucker R. Dearing* on the exceptions, for Paul J. Cockrell.

*David H. Fishman*, with whom was *Joseph I. Pines* on the petition, for The Bar Association of Baltimore City.

DIGGES, J., delivered the opinion of the Court.

This disciplinary proceeding brought by the Bar Association of Baltimore City, petitioner, against Paul J. Cockrell, the respondent and a member of the bar of this State, is now before us for final disposition. In *Bar Ass'n v. Cockrell*, 270 Md. 686, 313 A. 2d 816 (1974), we considered the findings and recommendations of the panel of judges to which this proceeding was initially transmitted; but, because that panel found that the respondent had violated certain professional standards of conduct in addition to those then formally before it, we deferred the disposition of the original complaint, granted the Bar Association leave to amend its "Petition for Discipline," and referred the proceeding to a different panel of judges for consideration of the supplemental charges that might be made. This was done, however, "without prejudice to the respondent's prerogative to raise, first in the hearing court and then in this Court, an objection based on the decision of the United States Supreme Court in *In re Ruffalo*, 390 U. S. 544, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968)." *Bar Ass'n v. Cockrell, supra* at 693. After a summation of the factual background of this case, we shall consider, individually, the findings and recommendations of each of these judicial panels.

The accusations lodged against Cockrell all stem from his representation of Alfred Mason in that client's claim against Frank J. Gach, for personal injury and property damage, growing out of an automobile accident which occurred on January 24, 1970. After months of negotiating, Cockrell was able to settle the claim with the insurer of Gach for $2500. The respondent received the settlement check about January

29, 1971, cashed it on February 3, and, after repeated urgings both by his client and the Bar Association (with which Mason had registered a complaint), finally, almost four months later on May 18, had his client come to his office for an accounting. At this meeting Mason signed the settlement sheet presented by Cockrell which showed expense deductions totaling $1,692.33 ($833.33 attorney's fees, $250 doctor bills, $600 advancements, $9 photostating) and received a check payable to him, drawn on an Illinois bank, for the balance, amounting to $807.67. When Mason presented this check for payment it was returned to him by the bank marked "insufficient funds." Eventually, on June 25, Cockrell paid the $807.67 by sending a certified check to Mason's bank.

## I. Original Charges Referred to First Panel

The specific professional misconduct allegations, three in number, charged by the petitioner and considered by the first panel, composed of Judges Albert L. Sklar, David Ross and Harry A. Cole, were that the respondent was guilty of:

(i) "recommending and/or permitting his client to participate in misrepresentation to ... [Gach's insurance company concerning] the amount of property damage suffered ... [, in] violation of DR 1-102(A) and DR 7-102(A)(5) and (7)";

(ii) "offering and/or paying a kick-back to the insurance adjuster ... [, in] violation of DR 1-102(A)(3), (4) and (6)"; and

(iii) "advancing monies to his client beyond the expenses of litigation ... [, in] violation of DR 5-103(B). If no monies were in fact advanced, then the presentation of a settlement sheet to his client reciting such advances is a violation of DR 1-102(A)(4) and (6) and of DR 7-101(A)(2) and (3) and 7-102(A)(5)."

The judges on this panel unanimously agreed that the

respondent did not misrepresent the amount of the property damage suffered (charge i) and was not involved with a "kick-back" to the insurance adjuster (charge ii). The Bar Association did not take exception to these findings and, in fact, "fully concurred" with the panel's conclusions. In light of our careful reading of the entire record, we agree that these charges are not supported by clear and convincing evidence, *Bar Ass'n v. Marshall,* 269 Md. 510, 516, 307 A. 2d 677 (1973), and, therefore, we dismiss them.

As to the allegation contained in charge iii concerning the advancement of money by the accused attorney to his client in violation of DR 5-103(B),[1] the judicial panel found that the evidence clearly and convincingly sustained this charge. We adopt this finding by the hearing court as not only did Cockrell *himself* testify that he advanced $300 on January 19, 1971, $150 on January 23, and another $150 on January 27, for a total of $600, but there was also introduced into evidence the May 18 settlement sheet presented by Cockrell to Mason, which itemized a $600 "Reimbursement for Monies advanced."

## II. Additional Charges Referred to Second Panel

Even though not charged in the complaint as originally filed, the first panel found that Cockrell committed the serious offense of misappropriating his client's funds in violation of DR 9-102.[2] It is because we felt that this

---

1. DR 5-103(B) states:
   "While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expense."

2. DR 9-102 states:
   "(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

appendaged finding was "clearly violative of [Maryland] Rule BV3 c as respondent [had] not been charged in the Bar Association's petition with that particular misconduct," *Bar Ass'n v. Cockrell, supra* at 692-93, that, after disposing of the other procedural objections asserted by the respondent, we granted the petitioner leave to amend though aware of the potential problems with this procedure which *In re Ruffalo, supra,* might arguably present.

The Bar Association amended the petition, alleging additional charges. In pertinent part they read:

> "On or about February 3, 1971, Cockrell negotiated a settlement check of the Pennsylvania National Mutual Casualty Insurance Company on behalf of Mason by endorsing Mason's name on the reverse of said check. Cockrell received $2,500.00 in cash as the proceeds of this settlement check, and either held said proceeds in cash in his law office or mingled said proceeds with his own funds. Cockrell later appropriated a portion of said proceeds to his own use in connection with the settlement of certain accounts between Cockrell and a Dr. James Priest. Cockrell further deposited a portion of said proceeds in an account in Cockrell's name in an

---

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

Illinois bank. Mason, despite his repeated and persistent requests for his share of said proceeds from or about February 13, 1971, and thereafter, did not receive any part of the proceeds from said settlement check until June 25, 1971.

* * *

"The conduct of Cockrell in initially failing to place his client's monies in trust or escrow account in a Maryland bank, thereafter depositing and commingling his client's funds with his own in an out-of-state bank, and using his client's funds to settle his own obligation with a physician, constitutes a misappropriation of his client's funds and is a violation of Article 10, § 44, Annotated Code of Maryland (1973 Supp.) and of DR 9-102."

The new charges contained in this amendment were considered by a second panel, composed of Judges Joseph L. Carter, Basil A. Thomas and Solomon Baylor.

Besides assessing whether they thought Cockrell was guilty of the additional charges, the judges of this second panel were requested, under *Bar Ass'n v. Cockrell, supra* at 693, to determine whether the decision of the Supreme Court in *In re Ruffalo*, 390 U. S. 544, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968), prohibited the new allegations contained in the amended complaint from forming a basis for disciplinary action.

*In re Ruffalo, supra,* involved a review by the United States Supreme Court, on certiorari, of a decision by the United States Court of Appeals for the Sixth Circuit which had disbarred Ruffalo, without a de novo hearing, from the practice of law before that court on the basis of an order of disbarment by the Ohio Supreme Court following proof to that court's satisfaction of Ruffalo's professional misconduct. The accused attorney was found, in the Ohio Supreme Court, to have engaged in misconduct consisting of hiring a railroad car inspector to investigate, during his off-duty hours, Federal Employers' Liability Act claims

against the inspector's employer. Ruffalo's objection, in the United States Supreme Court, to this finding of misconduct was that it had not been included in the original charges brought in the state court but was added there through amendment as a result of testimony, which included his own, presented during a hearing on the initial disbarment charges. The United States Supreme Court held that, even though the attorney was granted a continuance in order to have time to prepare a response to the new charge, he was, nevertheless, deprived of procedural due process since the added charge arose from testimony, both his own and that of another witness, given at the hearing on the charges as initially filed, and thus procedurally there was an "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges." *In re Ruffalo, supra* at 552. A key passage from the Court's opinion in *Ruffalo* is that which says:

> "The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh.
>
> "How the charge would have been met had it been originally included in those leveled . . . no one knows." *In re Ruffalo supra* at 551.

The holding of *Ruffalo,* asserted by Cockrell as a block to the proceedings before the second panel, was found by that tribunal (with Judge Baylor dissenting) not to constitute a barrier to its consideration of the amended charges. Having made this decision, the panel conducted a hearing on the amended charges at which the Bar Association reintroduced, in support of these additional allegations, all of the evidence that was before the first panel, including the testimony of the respondent and the chief complaining witness, Mason, as well as some additional corroborative evidence relating to the new charges. Based on this record produced before it, the second panel (with Judge Baylor again dissenting) found

that the respondent was guilty of misappropriation in that he "failed to place his client's monies in trust or escrow accounts in a Maryland bank"; "commingled his client's funds with his own"; and failed "to account over a five (5) month period" to Mason for the money collected for him — thus violating DR 9-102(A) and (B). Consequently, the majority on the panel recommended "that in view of the gravity of the charges, the name of the Respondent, Paul J. Cockrell, be stricken from the rolls of those authorized to practice law in this State."

In reviewing this recommendation, we note initially that if *Ruffalo* is strictly applied as it literally reads, then its broad holding would have a crippling effect on the primary purpose of disciplinary proceedings, which, as we have held, is "not for punishment, but rather [is] a catharsis for the profession and a prophylactic for the public." *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A. 2d 811 (1974); see also *Bar Ass'n v. Marshall, supra,* 269 Md. at 519. For example, if *Ruffalo* means in all cases what its words seem to indicate, once an attorney is brought before a disciplinary tribunal for some minor offense he can take the stand and make known every other professional indiscretion (perhaps even those of a more serious nature) he ever perpetrated and, in this way, immunize himself from any potential professional censorship for them because, under *Ruffalo,* "due process" would prevent an amendment of the initial allegations.[3]

In any event, as we understand the instruction of *Ruffalo,* we have no alternative here but to conclude that, because of the reintroduction before the second panel of the entire transcript from the first panel's hearing, which includes Cockrell's self-inculpatory testimony, the respondent could no longer be given an "opportunity to expunge the earlier

---

3. Because of this crippling effect of In re Ruffalo, 390 U. S. 544, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968), the courts of a number of states have used ingenious reasoning to avoid the consequences of its broad language. See, *e.g.,* Black v. State Bar of California, 103 Cal. R. 288, 7 Cal. 3d 676, 499 P. 2d 968 (1972); In re Gartland, 47 Ill. 2d 177, 265 N.E.2d 148 (1970); Louisiana State Bar Assoc. v. Jacques, 260 La. 803, 257 So. 2d 413, *cert. denied,* 409 U. S. 877 (1972).

statements and start afresh." Therefore, as the second panel received and to at least some extent relied on an evidentiary foundation which, under *Ruffalo*, must be considered to be tainted, the second panel's recommendation as to Cockrell's misappropriation guilt cannot on the record now before us form the basis for disciplinary action. In coming to this conclusion it is to be understood that our reliance here on *Ruffalo* is not to be construed as having any import beyond the particular procedural posture that evolved in this case.

As a consequence of this ruling, we are constrained to completely disregard the issue of Cockrell's culpability in respect to the new charges set out in the Bar Association's amended petition because they are not sufficiently supported by properly received evidence. Therefore, we confine Cockrell's accountability for professional misconduct to the charges contained in the "Petition for Discipline" as initially alleged by the Bar Association. Of these, we find, as was stated earlier in this opinion, that the respondent is reprovable for professional misconduct in that he advanced money to his client in violation of DR 5-103(B). Accordingly, we conclude that Paul J. Cockrell should be suspended from the practice of law in this State for a period of six months, accounting from May 1, 1975.

*It is so ordered.*