## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* JOHN J. McBURNEY

[Misc. Docket (Subtitle BV) No. 6, September Term, 1977.]

*Decided March 9, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*James E. Kenkel* for respondent.

*John Addison Howard, Deputy Bar Counsel,* for petitioner.

SMITH, J., delivered the opinion of the Court.

In this disciplinary action we conclude that the three-judge panel erred in excluding from their consideration a charge that the attorney violated certain disciplinary rules. Thus, we shall remand the case to the panel in order that they may

make a determination as to whether he did or did not violate those rules.

John J. McBurney (McBurney) was admitted to the Bar of this Court on June 27, 1961. He was admitted to practice in the District of Columbia in 1953. Bar Counsel filed a petition with us on behalf of the Attorney Grievance Commission alleging that McBurney violated those portions of Disciplinary Rules 1-102, 5-104, and 9-102 which we set forth below:

"DR 1-102 Misconduct.
(A) A lawyer shall not:
   (1) ...
        * * *
   (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

"DR 5-104 Limiting Business Relations with a Client.
(A) A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure...."

"DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
   (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
   (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless

the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

(1) ...

\* \* \*

(4) Promptly pay or deliver to the client as requested by a client the funds ... in the possession of the lawyer which the client is entitled to receive."

Exceptions to the three-judge panel's recommendation have been noted by McBurney and also by Bar Counsel on behalf of the Attorney Grievance Commission. McBurney objected, among other things, to the suggested sanction of disbarment. We find it necessary to address only the exceptions entered by Bar Counsel.

We shall relate only such facts as may be relevant in discussion of the procedural point which we shall address. It will be sufficient to say that McBurney deposited funds of his client in his personal checking account, that because of insufficient funds two checks to the client were not honored upon presentation to the bank upon which they were drawn, and that the client was finally paid by McBurney about six months after the funds were received.

McBurney interposed an objection before the three-judge panel to consideration of whether his conduct violated DR 1-102, DR 5-104, and DR 9-102(B). He claimed the charges under these three rules were not before the Inquiry Panel (composed of lawyers) which had earlier considered the matter pursuant to Maryland Rule BV6. In his answer to the petition for disciplinary action, McBurney said:

"[T]he Review Board acted on the report and recommendation of the Inquiry Panel convened in this case . . . which Panel concluded a single allegation of a violation of DR 9-102 and an

accompanying conclusion that the Respondent did not breach DR 6-101 of the Canons of Ethics."

DR 6-101 concerns competence of counsel. Counsel for McBurney pointed out to the three-judge panel that the Inquiry Panel had "completely dismissed [this] allegation, and found as a matter of fact, which cannot be reviewed further, that [McBurney] handled his client's personal injury suit in a competent manner up until settlement, and only sent forward the single charge [of] commingling of his client's funds with his own funds." The three-judge panel said it had "some reservations about whether or not 9-102(B) was . . . among those charges referred to the [Inquiry] Panel, because it seem[ed] to [them] that [it was] an essential basic fact in this case, which grows out of and arises out of the charges embodied in 9-102(A) . . . ." Nevertheless, it sustained the objection and considered only the charge of violation of DR 9-102(A).

Bar Counsel claims that the three-judge panel erred in its holding that they might not permissibly consider whether the acts of McBurney constituted a violation of disciplinary rules not presented to the Inquiry Panel.

Subtitle BV of the Maryland Rules pertaining to "Discipline and Inactive Status of Attorneys" is relatively new, since it was almost completely rewritten in 1975. Because the rules are new, the procedures to be followed are not as deeply ingrained in bench and bar as the rules of common law pleading such as that the proper general issue plea to an action in assumpsit is "never was indebted as alleged" or "never promised as alleged." Cases such as *Attorney Griev. Comm'n v. Andresen*, 279 Md. 250, 367 A. 2d 1251 (1977), probably would not have been before us in the posture in which we were obliged to consider them had there been a longer period of experience with these rules.

In early 1973 David E. Betts, Esq., as President of Maryland State Bar Association, appointed a special committee of distinguished members of the Maryland Bar under the chairmanship of Wilbur D. Preston, Esq., to consider uniform grievance procedures. The report of the

committee was submitted under date of April 22, 1974, and approved by the State Bar Association at its meeting on June 13, 1974. This report was embodied with but little change in the Forty-seventh Report of our Standing Committee on Rules of Practice and Procedure dated December 12, 1974. We adopted the new rules on March 10, 1975.

Rule BV6 a provides that "[e]very complaint that an attorney has committed an act of misconduct . . . shall be filed with and recorded by the Bar Counsel." He is to investigate each complaint. Unless a complaint is found to be without merit, he is obliged to "refer the complaint to an Inquiry Panel and give notice of the complaint to the attorney against whom the complaint has been made" calculated to "inform the attorney of the nature of the complaint made." Rule BV6 c 4 (a) provides for hearing by the Inquiry Panel. This panel of attorneys is to recommend either that the complaint be dismissed, that the attorney be reprimanded, or that charges be filed against the attorney. If a reprimand or charges are recommended, then Rule BV6 c 4 (b) requires the Inquiry Panel to "state the basis therefor in writing" and to "file with the Bar Counsel its recommendations, the reasons therefor and any evidence taken in the proceedings." Bar Counsel is then to "transmit to the Review Board and to the attorney, copies of the recommendations, reports and, wherever practical, copies of any evidence."

Procedure before the Review Board is set forth in Rule BV7 b which provides:

> "Each case transmitted to the Review Board by the Bar Counsel pursuant to Rule BV6 c. shall be reviewed by the Board. The Board may request oral argument in any proceedings before it. The Board may approve, reject or modify the recommendation of the Inquiry Panel, may remand for further proceedings or may dismiss the complaint. The Board shall state in writing the reasons for its decision. The Bar Counsel shall send the attorney and the person who made the complaint written notice of the decision of the Board, and he shall send

to either or both additional information and comments as the Board directs."

Under Rule BV9 any charges against an attorney are to be filed with us "by the Bar Counsel acting at the direction of the Review Board" and are "filed on behalf of the [Attorney Grievance] Commission . . . ." We "by order may direct that the charges be transmitted to and heard in any court and shall designate the judges to hear the charges and the clerk responsible for maintaining the record in the proceeding." Rule BV9 c provides:

> "The charges shall be in writing and shall be sufficiently clear and specific reasonably to inform the attorney proceeded against of any misconduct charged and of the basis of any allegation that he is incompetent."

Rule BV9 e sets forth provisions with reference to pleadings. The next step in the grievance process is a hearing on the charges, which is covered by Rule BV10. The three-judge panel which hears the evidence under that rule is required by Rule BV11 a to make its recommendations to us. Then Rule BV11 b provides for the proceedings before us.

The procedure under the present BV rules parallels that under the prior rules. Under former Rule BV2 investigation was "initiated and conducted by a committee of the Maryland State Bar Association, Inc., or by a committee of the county where the attorney under investigation maintain[ed] an office for the practice of law, or where he reside[d], or where the offense [was] alleged to have occurred." Such an investigation was initiated by the committee on its own motion or upon "a written complaint received from any responsible source." After it had conducted its investigation, the committee made its report to the executive council of the bar association by which it was appointed. Under Rule BV3 charges against an attorney were filed with us "by a bar association acting through its executive council." "Executive Council" was defined by Rule BV1 f as the governing body or council of the bar association involved.

It will be perceived that under our present rules as well as under the predecessor rules, the ultimate decision as to whether an attorney has or has not been guilty of misconduct is to be made by us, and that no provision is made for a record before us until after the petition for disciplinary proceedings has been filed with us. It will be further noted that there is no provision by which the testimony taken before the Inquiry Panel is to be filed with us or used as evidence before us.

It is the "complaint that an attorney has committed an act of misconduct" which is referred to the Inquiry Panel. In this instance it was a complaint that McBurney received money on behalf of his client from an insurance company and then failed to pay over to his client that which was due, having issued two checks therefor which were not honored by the bank on which they were drawn by reason of McBurney's having an insufficient amount on deposit in his account. We regard this procedure as similar to a grand jury presentment. A presentment is said by L. Hochheimer, *Criminal Law* § 84 (2d ed. 1904), to be "an informal accusation of crime by a grand jury, upon which the prosecuting attorney afterwards frames a bill of indictment." 42 C.J.S. *Indictments and Informations* § 7 b (1944) refers to it as being "regarded, in the practice at common law and under some of the statutes, as nothing more than instructions by the grand jury to the public prosecutor for framing a bill of indictment, which, being prepared by him, is submitted to them and found a true bill."

In argument before the three-judge panel, counsel for McBurney said of the proceedings before an Inquiry Panel:

"Some liken it to a grand jury, it is just a fact finding body; Your Honors here now in court on any petition have the findings of fact, conclusions and recommendations as to the appropriate sanctions, if any, to be taken. What that analogy fails to come to grips with is that unlike the grand jury or the preliminary hearing, as we mentioned, under the Rules if a matter is dismissed unanimously that is the end of it. So, if these matters had been brought to the panel Mr. McBurney, as well as every other

attorney who had a charge here now in the nature of new charges, had the absolute right to controvert them at the three-lawyer panel, and if successful that matter would have been dismissed and could not be addressed here."

What McBurney fails to recognize is that before the Inquiry Panel he was responding to the factual allegation that he placed funds of his client, Queen, in his own personal account, that he did not attempt to pay over those funds to Queen until some three months after the settlement, that his actions are susceptible of an inference that he had invaded those funds since he had an insufficient amount on deposit in his account to pay the sum due Queen when each of the two checks was presented, and that it was not until about seven months after the settlement and more than three months after the first check was drawn that Queen received his money. The Inquiry Panel found reason to believe this allegation, just as a grand jury may find probable cause. The Review Board agreed and directed that charges be filed. Bar Counsel then framed the charges, noting the disciplinary rules which such charges would violate, just as a prosecutor would frame the formal charges of an indictment after a grand jury has returned a presentment. It is these charges in the petition to us, as framed by Bar Counsel, against which this attorney must defend himself. As we have already observed, the evidence before us is that adduced before the three-judge panel, not that presented to the Inquiry Panel — although, of course, the testimony before the Inquiry Panel may by stipulation be presented to the three-judge panel. An attorney has full opportunity before a three-judge panel to face his accusers, to cross-examine them and other witnesses, and to adduce evidence on his behalf. In *Bar Ass'n v. Marshall,* 269 Md. 510, 515-16, 307 A. 2d 677 (1973), we analogized the proceedings before a three-judge panel to a hearing before a master in chancery. A master may hear testimony, in which case there is opportunity for cross-examination. The master then makes his recommendation to the chancellor.

The command of Rule BV9 c that "[t]he charges ... be sufficiently clear and specific reasonably to inform the

attorney proceeded against of any misconduct charged" does not require Bar Counsel when he petitions us for disciplinary action against an attorney to say that the alleged conduct is a violation of a specific rule. It is the factual allegation against which the individual must defend himself. If Bar Counsel wishes to specify a violation of certain disciplinary rules in the petition to us, then certainly he should, as he did here, select all rules which conceivably might have application to the facts of the particular case, because he becomes limited in the disciplinary action by such rules as he selects.

We prefer to make no determination as to whether McBurney is guilty of unprofessional conduct and, if he is guilty, the sanction to be imposed until we know whether or not the three-judge panel concludes from the evidence before them that McBurney violated Disciplinary Rules 1-102(A), 5-104(A), and 9-102(B). Accordingly, we shall remand the case to the panel for a prompt and early determination on this subject.[1] At that time the record may be supplemented by such evidence as McBurney or Bar Counsel may wish to adduce relevant to the pending charges. The panel will then return the matter to us with its findings and recommendations in writing.

*It is so ordered.*

---

1. In returning this case as we do, we do not create a problem under In Re Ruffalo, 390 U. S. 544, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968), such as that which we saw in Bar Ass'n v. Cockrell, 274 Md. 279, 286-87, 334 A. 2d 85 (1975). There additional charges were brought against the attorney as a result of evidence which came out before the three-judge panel in the process of the hearing on the initial complaint. In *Cockrell* at 285 Judge Digges quoted for the Court from *Ruffalo* where the Supreme Court said:

"The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh." In re Ruffalo, 390 U. S. at 551.

Here, unlike the situation in *Cockrell*, McBurney has known from the outset the nature of the charges against him. The proceedings before the Inquiry Panel are merely a part of the preliminary investigation, just as under the prior procedure the preliminary investigation or hearing was before a committee of a bar association, usually its grievance committee. The proceedings to which the Supreme Court referred in *Ruffalo* begin in Maryland when the petition for disciplinary action is filed in this Court, not before.