527 A.2d 325

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Charles Clinton PARSONS & William Reback.

Misc. (Subtitle BV) Nos. 34 & 35, Sept. Term, 1986.

Court of Appeals of Maryland.

July 2, 1987.

Melvin Hirshman, Bar Counsel and Walter D. Murphy, Jr., Asst. Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Charles Clinton Parsons, Washington, D.C., for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and JAMES F. COUCH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

COUCH, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed petitions for disciplinary action against

Charles C. Parsons and William Reback,[1] alleging violation of Disciplinary Rules 1–102(A)(4), (5), and (6),[2] 6–101(A)(3),[3] and 7–102(A)(5).[4] We referred the matter, pursuant to Maryland Rule BV 9 b, to Judge Bruce C. Williams of the Circuit Court for Anne Arundel County to make findings of fact and conclusions of law. After conducting a hearing, Judge Williams made the following findings with respect to each petition:

"FINDINGS OF FACT AND CONCLUSIONS OF LAW

"This case grew out of the final *en banc* Opinion and Order of the District of Columbia Court of Appeals in the case of *In Re: William Reback and Charles C. Parsons,* case number 83–1289 in the District of Columbia Court of Appeals issued on July 31, 1986. [*See In re Reback,* 513 A.2d 226 (D.C.1986) (en banc)]. By that Opinion and Order, Mr. Reback and Mr. Parsons were suspended from the practice of law for six (6) months, effective August 30, 1986. This case is now before this Court on reciprocal discipline.

---

1.  We shall collectively refer to Charles C. Parsons and William Reback as "respondents." Parsons and Reback are partners in the law firm of Reback & Parsons.

2.  "DR 1–102 Misconduct.
    (A) A lawyer shall not:

    >   .   .   .   .   .

    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
    (5) Engage in conduct that is prejudicial to the administration of justice.
    (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

3.  "DR 6–101 Failing to Act Competently.
    (A) A lawyer shall not:

    >   .   .   .   .   .

    (3) Neglect a legal matter entrusted to him."

4.  "DR 7–102 Representing a Client Within the Bounds of the Law.
    (A) In his representation of a client, a lawyer shall not:

    >   .   .   .   .   .

    (5) Knowingly make a false statement of law or fact."

"Maryland Rule BV10(e)(1) states, in pertinent part: '...A final adjudication in a disciplinary proceeding by a judicial tribunal or a disciplinary agency appointed by or acting at the direction of a judicial tribunal that an attorney has been guilty of misconduct is conclusive proof of the misconduct in the hearing of charges pursuant to this Rule.'

See *Attorney Grievance Commission v. James*, 300 Md. 297, 477 A.2d 1185 (1984), *Attorney Grievance Commission v. Thorup*, 300 Md. 189, 477 A.2d 754 (1984), *Attorney Grievance Commission v. Rosen*, 301 Md. 37, 481 A.2d 799 (1984), and *Attorney Grievance Commission v. Moore*, 301 Md. 169, 482 A.2d 497 (1984).

"The adjudication of misconduct in these cases by the District of Columbia Court of Appeals is final, the Respondent[s] having chosen not to file a Petition for Writ of Certiorari to the Supreme Court of the United States.

"In late May, 1980, Mrs. Rosemary Lewis, met with William Reback concerning her domestic case. Within a matter of days, thereafter, she retained the firm of Reback and Parsons to pursue her claim for divorce and agreed to pay a $500 fee for their legal services plus certain estimated costs. Although Mr. Reback was the only attorney in that firm to whom Mrs. Lewis ever spoke, Charles C. Parsons, Esquire, took responsibility for the case. On June 9, 1980 Mrs. Lewis signed and verified her complaint for divorce. Charles C. Parsons, Esquire, then signed and filed that complaint for divorce in the Superior Court for the District of Columbia on June 12, 1980 and a summons was issued, directed to the defendant in that action. The summons was not served and neither Mr. Parsons nor Mr. Reback took any further action in that case.

"On November 12, 1980, the Superior Court for the District of Columbia issued a warning notice pursuant to Superior Court Domestic Relations Rule 41(f) which provides that a case that is not at issue within six (6) months after its filing date shall be dismissed after notice to the

attorneys. Apparently, as a result of a defect in the firm's case-handling procedures, neither Mr. Reback nor Mr. Parsons saw that notice. The case was then dismissed without their knowledge on December 17, 1980.

"In March, 1981, Mr. Reback received a telephone call from Mrs. Lewis' brother, a Mr. Jordan, inquiring about the status of his sister's case. Mr. Reback and Mr. Parsons then learned that the case had been dismissed, when they looked at their office file. Neither Mr. Reback nor Mr. Parsons told Mrs. Lewis or her brother of the dismissal at that time. Instead, they prepared a second complaint, identical in substance to the first complaint.

"The second complaint purported to be verified by Mrs. Lewis. Instead of obtaining Mrs. Lewis' signature, however, Mr. Reback signed Mrs. Lewis' name to the complaint in the presence of Mr. Parsons. One of the two lawyers, or a secretary acting at their direction, then had the complaint notarized. Whoever took the complaint to the Notary necessarily represented that the signature was genuine. Mr. Parsons filed the complaint in Court on March 27, 1981, knowing that the signature of Mrs. Lewis was false.

"Mr. Reback and Mr. Parsons then assigned the case to an associate, Dana Dembro. They told the associate to come to them if he had questions. Other than giving him that instruction, they did not supervise him. He had trouble obtaining the required proofs of publication of notice to Lewis' husband. After another warning from the Court pursuant to Superior Court Domestic Relations Rule 41(f) issued on August 28, 1981, the case was dismissed pursuant to that rule on September 30, 1981. On October 9, 1981, Mr. Dembrow filed a Motion to Reinstate the case which was granted on October 13, 1981.

"In March, 1982, Mrs. Lewis discovered that the first complaint had been dismissed and a second one filed over her falsified signature. Mrs. Lewis then asked Mr. Reback and Mr. Parsons to withdraw as her attorneys,

which they did. They returned to her all fees which she had paid them. Mrs. Lewis proceeded in the second case with new counsel and a divorce was ultimately granted in that proceeding on October 21, 1982.

"In approximately August, 1982, Petitions instituting formal disciplinary proceedings in the District of Columbia were filed against Mr. Parsons and Mr. Reback. A hearing was held on those Petitions on November 24, 1982 before the three member Hearing Committee Number 4 of the Board on Professional Responsibility for the District of Columbia Bar (D.C. Bar Docket Nos. 370–81 and 68–82). Mr. Reback and Mr. Parsons were present at that hearing, represented by counsel, testified and cooperated fully. They expressed remorse for their actions." As to Parsons, the trial court concluded:

## "CONCLUSIONS OF LAW

"1. By his neglect of both of Mrs. Lewis' cases, [Parsons] violated Disciplinary Rule 1–102(A)(5) and 6–101 (A)(3).

"2. By knowingly causing Mrs. Lewis' false signature on the second complaint for divorce, to be notarized and filing that complaint in the Superior Court for the District of Columbia, without the consent or knowledge of Mrs. Lewis, [Parsons] violated Disciplinary Rules 1–102(A)(4)(5) and 7–102(A)(5)."

As to Reback, Judge Williams concluded:

## "CONCLUSIONS OF LAW

"1. By his neglect of both of Mrs. Lewis' cases, [Reback] violated Disciplinary Rule 1–102(A)(5) and 6–101(A)(3).

"2. As a result of his falsifying Mrs. Lewis' signature on the second complaint for divorce, causing it to be notarized and filed in the Superior Court for the District of Columbia, without the consent or knowledge of Mrs.

Lewis, [Reback] violated Disciplinary Rules 1–102(A)(4)(5) and 7–102(A)(5)."

The respondents have not excepted to any of Judge Williams's findings of fact or conclusions of law and we adopt them. *Attorney Grievance Commission v. Maxwell,* 307 Md. 600, 516 A.2d 570 (1986). The only issue before us is the discipline to be imposed. Relying on the sanction imposed in the District of Columbia, Bar Counsel recommends a six month suspension. Opposing this recommendation, the respondents contend that they were denied due process of law in the District of Columbia disciplinary proceedings, and therefore this Court should reject as "fatally flawed" the sanction imposed in that jurisdiction. They recommend a sanction no greater than censure.[5]

Relying on *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), respondents contend that "they suffered imposition of a severe six-month suspension [in the District of Columbia] based upon the Board [on Professional Responsibility's] and the Court [of Appeals's] conclusion that Respondents' misconduct was tantamount to criminal forgery and uttering, a criminal charge with which they were never confronted in the Petition [Instituting Formal Disciplinary Proceedings] against them nor before the Hearing Committee."[6] According to respondents, had they been

---

**5.** Respondents do not contend they were denied due process in the disciplinary proceedings in this State.

**6.** In the District of Columbia, the Office of Bar Counsel has the responsibility for investigating and prosecuting complaints against attorneys of that jurisdiction. D.C. Bar Rule XI, §§ 4(3)(b), 6 & 7. Unless an allegation of misconduct has no apparent merit, Bar Counsel institutes formal disciplinary proceedings and prosecutes the case initially before a three-member Hearing Committee appointed by the Board on Professional Responsibility ("Board"). *Id.* at §§ 4(3), 5, 6(1)(d) & 7(1)—(2). Before the Hearing Committee, the attorney is entitled to be represented by counsel, to cross-examine witnesses, and to present evidence on his own behalf. *Id.* at § 7(2). Within sixty days of the hearing's conclusion, the Hearing Committee submits a report to the Board containing its findings and recommendation of a sanction, together with the full record of the proceedings. *Id.* The Board is empowered, normally after hearing argument, to affirm or

notified in the Petition or before the Committee that the criminal charges would form the basis of their sanctions, "they could have demonstrated at the Hearing Committee by way of defense that the criminal allegations must fail because: 1) there was no 'specific intent to injure' their client; and 2) their client 'ratified' the second complaint they filed on her behalf by using it to obtain her divorce."

In *Ruffalo*, the Supreme Court overturned the decision of a federal appellate court to disbar Ruffalo, without a *de novo* hearing, from practicing before that court. The appellate decision was based upon an earlier order of disbarment from the Ohio Supreme Court following proof of Ruffalo's professional misconduct. In the Supreme Court, Ruffalo argued that this finding of misconduct was not based upon the original charges brought in the state court, but was based upon an additional charge later added by amendment as a result of his testimony during the hearing on the initial disbarment charges. Sustaining this contention, the Supreme Court ruled that:

"even though the attorney was granted a continuance in order to have time to prepare a response to the new charge, he was, nevertheless, deprived of procedural due process since the added charge arose from testimony, both his own and that of another witness, given at the hearing on the charges as initially filed, and thus procedurally there was an 'absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges.' "

---

modify the recommendation of the Hearing Committee, to remand the matter for further proceedings, or dismiss the petition. *Id.* at § 7(3). Unless the petition is remanded or dismissed, or the matter is concluded by reprimand, the Board must promptly submit its findings and recommendation, together with the entire record, to the District of Columbia Court of Appeals. *Id.* That court hears arguments, if requested by respondent, and enters a final order, including a sanction, in the matter. *Id.* It is the policy of the District of Columbia Court of Appeals to accept the Board's recommendation unless it would foster a tendency toward inconsistent dispositions for comparable conduct, or would otherwise be unwarranted. *Id. See In re Williams,* 513 A.2d 793 (D.C.1986).

*Bar Association of Baltimore City v. Cockrell,* 274 Md. 279, 285, 334 A.2d 85, 88 (1975) (quoting *Ruffalo,* 390 U.S. at 552, 88 S.Ct. at 1226, 20 L.Ed.2d 117).[7]

After *Ruffalo,* it is clear that an attorney against whom a complaint has been filed must receive notice of the charges against him at the time disciplinary proceedings commence. *See Attorney Grievance Commission v. Hyatt,* 302 Md. 683, 688, 490 A.2d 1224, 1226 (1985); *Attorney Grievance Commission v. McBurney,* 282 Md. 116, 124 n. 1, 383 A.2d 58, 63 n. 1 (1978); *Attorney Grievance Commission v. Walman,* 280 Md. 453, 463–64, 374 A.2d 354, 361–62 (1977); *Cockrell,* 274 Md. at 285–87, 334 A.2d at 88–9. In Maryland, the notice requirement is satisfied by the filing of a Petition for Disciplinary Action in this Court. *Hyatt,* 302 Md. at 688, 490 A.2d at 1226; *McBurney,* 282 Md. at 124 n. 1, 383 A.2d at 63 n. 1. Likewise, in the District of Columbia, the attorney receives proper notice of the charges when Bar Counsel files a Petition Instituting Formal Disciplinary Proceedings with the Board on Professional Responsibility. *See In re Colson,* 412 A.2d 1160 (D.C.1979); *In re Smith,* 403 A.2d 296 (D.C.1979). *See also* D.C. Bar Rule XI, § 7(2).

On the facts of this case, we conclude that the respondents' due process claim clearly lacks merit. Initially, we reject the respondents' contention that the decision to suspend them for six months in the District of Columbia was based, in whole or in part, upon the conclusion that their misconduct amounted to criminal forgery and uttering. In its *en banc* opinion in this case, the District of Columbia Court of Appeals explicitly refused to consider as an aggra-

---

7. A key passage from *Ruffalo* states:
"The charge must be known before the proceedings commence. They become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused. He can then be given no opportunity to expunge the earlier statements and start afresh."
*Ruffalo,* 390 U.S. at 551, 88 S.Ct. at 1226, 20 L.Ed.2d 117.

vating factor the possibility that the respondents' misconduct could result in criminal convictions. The Court stated:

"Turning next to aggravation, we see no factor here that would suggest a sanction heavier than that which the violations themselves would otherwise call for. We note in this connection that there was discussion at oral argument and in the majority and dissenting opinions at division, 487 A.2d at 242 and 244, of the possibility that respondents may have committed the criminal offenses of forgery and uttering. D.C.Code § 22–1401 (1981). In our view, that mere possibility is not a significant factor under the circumstances of this case. The prosecuting authority never charged respondents with those offenses. The disciplinary hearings were not conducted with a view to determining whether respondents committed them. Respondents did not admit guilt of those offenses; to the contrary, if respondents were charged it would be necessary to resolve serious issues, including especially the matter of criminal intent.

.    .    .    .    .

"There are so many permutations of the relationship of possible criminal violations to bar discipline that generalizations are of little use. Instead, as we said in *[In re] Smith* [403 A.2d 296 (D.C.1979)] of sanctions generally, 'each case must be reviewed upon its own terms.' *Smith,* 403 A.2d at 303. For the reasons stated above, the possibility that there was criminal conduct is not significant here."

*In re Reback,* 513 A.2d at 233.[8] Stated succinctly, since the respondents' "likely criminality" played no part in the fashioning of a disciplinary sanction, there was no need to notify them of possible criminal charges in the Petition Instituting

---

8. To the extent the panel opinion of the District of Columbia Court of Appeals suggested otherwise, it has been vacated and thus retains no continuing vitality. *See In re Reback,* 492 A.2d 267 (D.C.1985), *vacating* 487 A.2d 235 (D.C.1985) (original panel opinion).

Formal Disciplinary Proceedings or before the Hearing Committee proceedings commenced.

Moreover, the Petitions Instituting Formal Disciplinary Proceedings, and the Specification of Charges attached thereto, adequately spelled out the nature of the charges against the respondents. Indeed, they conceded during oral argument before this Court that they knew at the outset of the proceedings in the District of Columbia the specific acts of misconduct for which they were being disciplined. Unlike *Ruffalo*, there were no surprises in this case. Accordingly, we conclude the due process safeguards enunciated in *Ruffalo* have been met in this case.

■ When the Court considers the appropriate sanction in a case of reciprocal discipline, we look not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct.

We find our recent decision in *Attorney Grievance Commission v. Maxwell*, 307 Md. 600, 516 A.2d 570 (1986) to be persuasive on this issue. In *Maxwell*, we imposed a 90–day suspension on an attorney for his "deliberate falsification of [a] notary certificate, and his knowing attestation of a false signature on a deed as genuine." *Id.* at 604, 516 A.2d at 572. Although we took cognizance of Maxwell's prior good record and his remorse, as well as the lack of actual harm resulting from his misdeeds, we refused to condone the "deliberate falsification of a solemn document by an experienced attorney." *Id.* at 605, 516 A.2d at 572.

The factors that led us to impose a 90–day suspension in *Maxwell* guide our disposition in this case. Respondents have admitted their wrongdoing since the outset of these proceedings and, like Maxwell, have expressed remorse for their actions. Moreover, there is nothing in this record suggesting that the respondents have maintained anything but an unblemished record of service for the years prior to these proceedings. Yet, we are mindful of the serious

transgression that occurred in this case—falsely signing a client's name to the divorce complaint and having it notarized and filed with the court—conduct very similar to the misdeeds we condemned in *Maxwell*. As we said there, "[t]hat this action was done to assist a client ..., other than for the lawyer's personal gain, does not exempt Maxwell from discipline." *Id.* at 605, 516 A.2d at 572. We also must take into account the respondents' neglect of their client's cases, which ultimately led to the more serious misconduct in this case.

■ Giving careful consideration to the facts and circumstances of this case, we conclude that in order to protect the public from misconduct of this sort, a 90–day suspension is the appropriate sanction for Parsons and Reback. Their suspension shall commence 30 days from the date of the filing of the opinion in this case. Prior to termination of the suspension, they shall pay all costs of the disciplinary proceedings.

IT IS SO ORDERED; RESPONDENTS SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE BV15 c. FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHARLES C. PARSONS AND WILLIAM REBACK.