Circuit Court for Baltimore County
Case No. 03- C-12-002231

Argued: January 8, 2013

IN THE COURT OF APPEALS OF

MARYLAND

Misc. Docket  AG  No. 81

September Term, 2011

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JEFFREY DAVID KAHL

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
*Bell,

JJ.

Opinion by Bell, C.J. (Retired)

Filed: January 29, 2014

*Bell, C.J., now retired, participated in the hearing
and conference of this case while an active
member of this Court; after being recalled pursuant
to the Constitution, Article IV, Section 3A, he also
participated in the decision and adoption of this
opinion.

The petitioner, the Attorney Grievance Commission of Maryland (the petitioner), acting through Bar Counsel and pursuant to Maryland Rule 16-751 (a),[1] filed, pursuant to Maryland Rule 16-751, a Petition for Disciplinary or Remedial Action against Jeffrey David Kahl, the respondent. In that petition, it alleged that the respondent violated Rules 1.15, Safekeeping Property,[2] 8.1,Bar Admissions and Disciplinary Matters,[3] and 8.4, Misconduct,[4]

---

[1] Maryland Rule 16-751 (a) provides:
> "(a) Commencement of disciplinary or remedial action.
> "(1) Upon approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.
> "2) Conviction of Crime; Reciprocal Action. If authorized by Rule 16-771 (b) or 16-773 (b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission. Bar Counsel promptly shall notify the Commission of the filing. The Commission on review may direct the withdrawal of a petition that was filed pursuant to this subsection."

[2] Rule 1.15 of the Maryland Lawyers' Rules of Professional Conduct provides:
> "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
> "(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16-607 b.
> "(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.
> "(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such

of the Maryland Lawyers' Rules of Professional Conduct ("MRPC"), as adopted by

Maryland Rule 16-812; Maryland Rules 16-606.1, Attorney trust account record-keeping;[5]

property.
"(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute."

[3]MRPC 8.1 provides:
"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
"(a) knowingly make a false statement of material fact; or
"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

[4]MRPC 8.4 provides:
"It is professional misconduct for a lawyer to:
"(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another
"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice ...."

[5]Maryland Rule 16-606.1 provides:
"(a) Creation of Records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:
"(1) Attorney Trust Account Identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.
"(2) Deposits and Disbursements. A record for each account that

2

and 16-609, Prohibited transactions,[6] and Maryland Code (1989, 2010 Repl, Vol.) § 10-306

of the Business Occupations and Professions Article ("BP").[7]   We ordered, pursuant to

Maryland Rule 16-752 (a), that the matter be transmitted "to the Circuit Court for Baltimore

---

chronologically shows all deposits and disbursements, as follows:
 "(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;
 "(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;
 ("C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction."

[6]Maryland  Rule 16-609 provides:
 "a. Generally. An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.
 "b. No Cash Disbursements. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.
 "c. Negative Balance Prohibited. No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate."

[7]Md. Code (1989, 2010 Repl. Vol.) § 10-306 of the Bus. Occ. & Prof. Article provides:
 "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

County, to be heard and determined by Judge Mickey J. Norman, of the Third Judicial Circuit, in accordance with Maryland Rule 16-757."

Although personally served with the Petition for Disciplinary or Remedial Action, Interrogatories and Request for Admissions of fact and Genuineness of Documents, the respondent made no timely response, neither filing an answer to the petition nor otherwise responding to any of the petitioner's pleadings. Nevertheless, when the matter came on for a hearing on the merits, he was permitted to participate: the respondent was allowed to, and did, cross-examine witnesses and he was offered the opportunity to submit proposed findings of fact and conclusions of law. He chose not to testify in his defense and he failed to propose findings of fact and conclusions of law for the court's consideration, however. Following the hearing, the hearing judge made findings of fact, as follows.

The respondent, who was admitted to the Maryland Bar on January 3, 2002 and, at all times relevant to this case, maintained an office for the practice of law in Baltimore County, in February 2004, joined with Richard K. Scott, who described the respondent as his best friend, to establish a law partnership, Scott & Kahl, L.L.C. Under their agreement, they were the only attorneys in the firm, "100% of the legal fees generated by them would be shared 50/50 ...everything was 50/50, bills and profits." The parties received "draws" or salary twice a month, on the 15th and the 30th, to be taken from the firm's operating account, one of its two bank accounts, the other being an IOLTA, or trust, account. As explained, without contradiction, by Scott, who was familiar with the procedure for depositing and withdrawing

4

funds from these accounts and whom the hearing judge determined "diligently maintained both bank accounts,"

> "... fees owed to the Firm for professional services were not paid directly from the trust account. Rather, monies in the trust account that the parties earned were then transferred into the operating account. Any fee disbursements owed to the partners were distributed from the operating account. ... [A] Firm's computer kept the account records on spreadsheets, accessible by either partner. ... In addition to the bi-weekly salary of $ 1,500, if either partner needed additional funds, 'the other would take the exact same amount.'"

In December, 2009, Scott discovered several wire transactions, made in November and December, transferring funds from the firm's trust account to the respondent's personal account. Not having been advised of those transactions and being unable to find evidence that the respondent was owed fees other than his draw, Scott confronted the respondent, who "'told Scott that he had purchased stock options and needed the money right away to pay margin calls.'" Accepting the respondent's expression of remorse, Scott did not further pursue the matter, giving the respondent a second chance. He did institute additional safeguards against misappropriation: he placed the firm's checkbook in the office safe, took the respondent's key to the safe, and reviewed the bank accounts more frequently.

Nevertheless, on May 19 and 28, 2010, the respondent transferred $1300 and $2000, respectively, from the firm's trust account to his personal checking account. As before, Scott was not informed of either transfer, before, or after, it was made. A deposit was also made, by the respondent, '[u]sing a handwritten checking/saving deposit slip," into the firm's trust account. The source of that $1300 deposit is not known and the respondent did not advise

5

Scott of the deposit, either before or after it was made. After confronting the respondent, who neither denied taking the monies nor offered any explanation, Scott terminated the partnership and, thereafter, filed a complaint with the petitioner.

During the investigation of the Scott complaint, the respondent admitted making both withdrawals from the firm's trust account. With respect to the $1300 withdrawal, he claimed it was a mistake, that he intended to withdraw it from the operating account, and that when he realized the mistake, he redeposited the funds into the trust account. The $2000, he explained, were donations to help defray the funeral expenses of his late brother in law, which were deposited in the trust account on the advice of "'a husband and wife team [attorneys],"' that was handling his brother in law's estate. According to the respondent, he gave the $2000 to Scott, in a white envelope, for deposit in the trust account. Scott denied ever receiving such an envelope from the respondent.

The petitioner requested the respondent's financial records, that is, his personal account at Bank of America. Although he was reminded to provide the requested records, he never did so. The records were subpoenaed, prompting the respondent to advise the petitioner, contrary to an earlier representation, that the records had already been sent, that "he had just requested copies of the records from the bank."

The respondent, on occasion, accepted representation and fees, but did not report either in accordance with firm policy, thus mishandling funds entrusted to the firm or fees owed to the firm. One such example was that involving Keith Hoyle, whom the respondent

6

agreed to represent in a speeding case. Although the respondent was paid $200 for the representation, "there was no record of the Respondent receiving or recording the fee in the Firm's books."

Another example involved fees owed the firm by the Public Defender for representation in conflict cases:

> "Scott discovered that, on October 20, 2009, a deposit of $1,292.00 was made to the Firm's trust account. That same day, $1,292.00 was transferred from the trust account to the Respondent's personal account at Bank of America. The Firm did not have a record of the receipt or disbursement of these funds. Scott researched the matter and determined that a check in the amount of $1,292.00 was received from the State of Maryland, payable to the Firm. Scott's investigation of those funds revealed that the check was for services provided to the Office of the Public Defender by the Firm. Based on his years of practice with the Respondent, Scott is familiar with Respondent's handwriting. He observed that the Respondent endorsed the deposited check, and the Respondent wrote the deposit slip for the transaction. ... The check for $1,292.00 was fee income, and should not have been deposited into the trust account. Even if the Respondent had mistakenly deposited those funds into the trust account, he failed to follow established Firm procedure and policy to transfer those funds to the operating account before dispersing those funds as fee income."

Two other examples are the $1000 paid to the respondent by a Mr. German, for which there was no "paper transaction," indicating a deposit and the $600 Mr. Pedro Corona paid to the respondent for representation. When the claims of the other people, who contacted Scott, informing him that they paid the respondent for legal services, is taken into account, Scott's "uncontradicted testimony is that the Respondent may have misappropriated between $40,000 - $50,000 in fees owed to the Firm."

Finally, the respondent, without Scott's knowledge or consent, intercepted a

7

credit/debit card issued on the firm's operating account, and used it to withdraw $200 from an ATM in Maryland, on July 19, 2009. Citing an unspecified emergency in New Jersey, the respondent admitted to the withdrawal. His explanation for the withdrawal in Maryland - that it was to repay a loan from his aunts and uncles - was determined by the court to lack credibility.

From the foregoing, Judge Norman drew conclusions of law, as follows:

"This Court finds by clear and convincing evidence that during the period 2009 through 2010, the Respondent converted, for his personal use, fees owed to the Firm. On occasion, during the period 2009 through May 2010, the Respondent transferred funds from the Firm's attorney trust account to his personal bank account. During the period 2009 through June 2010, the Respondent used trust funds maintained in the Firm's attorney trust account for unauthorized purposes. ... The Respondent did not inform Scott of the subject-matter transfers.

"The Respondent failed to maintain and complete records of the transfers he made from the Firm's attorney trust account to his personal bank account. ...

"During the period 2009 through June 3, 2010, Respondent engaged in conduct involving dishonesty, deceit, and/or misrepresentation in his dealings with Scott. ...

*   *   *   *

"This Court finds by clear and convincing evidence that the Respondent knowingly made a false statement of material fact to Bar Counsel, when he testified on December 6, 2010, that he gave $2, 000 in cash to Scott to be deposited to the Firm's trust account. The Respondent represented that he discussed the funds, i.e. the purported donations to defray the cost of his brother-in-law's funeral, with two lawyers who advised him to put the funds in the Firm's trust account. ... Scott testified that the Firm's records did not show the transaction. This Court finds Scott's testimony, that he neither had knowledge of these funds, nor had he received $2, 000 in cash from the

8

Respondent, to be credible.

"The Respondent's representation that two attorneys instructed him to deposit the $2, 000 in the trust account was not corroborated. Both lawyers denied speaking with the Respondent about such funds, and indicated that they would not have advised hm to put the funds in the Firm's operating account.

"The source of the $2, 000 was certainly material to Bar Counsel's investigation of the transfers of the trust funds to the Respondent's personal account. Clear and convincing evidence exists that the Respondent's statement concerning the $2, 000 was a material misrepresentation and that he thereby violated MRPC 8.1 (a).

"The Respondent's explanation for the $1,300 transfer on May 19, 2010, was also shown to be a material misrepresentation. In his December 6, 2010 statement, the Respondent said that on May 19, 2010, he wanted to take a $1,300 advance on his regular draw from the operating account, but mistakenly wrote the trust account number on the withdrawal slip. According to the Respondent, the funds were needed to pay taxes owed on his mother's property, and that he gave the funds to his brother to pay the taxes. The Respondent testified that the mistake was discovered when Scott questioned him about the transaction, and that he returned the funds to the trust account that same day, May 25, 2010. ... However, the Respondent could not have learned from Scott about, and corrected, the error on May 25th, because Scott did [not] know of the $1,300 transaction until after the May 28th transfer of the $2,000. After May 28th, he confronted the Respondent about the $1,300 transfer.

"The bank records for the Respondent's personal account demonstrated that the $1,300 transferred to the personal account on May 19, 2010, was disbursed for what appears to be the Respondent's living expenses, (i.e. car payments and debit card purchases from grocery stores). None of the disbursements between May 19th and May 25th were in the amount of $1,300, and none were to the Respondent's mother or brother. ... Additionally, Ramsey [the petitioner's investigator] interviewed the Respondent's brother, who did not corroborate the Respondent's representations that the funds were used to pay their mother's property taxes. This Court find by clear and convincing evidence that the Respondent made material misrepresentations to Bar Counsel concerning the $1,300 transaction, in violation of MRPC 8.1 (a).

"This Court finds the Respondent also violated [MRPC] 8.1 (b) when he

9

knowingly failed to respond to Bar Counsel's demands for bank records for his personal account. It was not disputed that on or about December 6. 2010, Assistant Bar Counsel requested the Respondent to provide financial records. On or about February 25, 2011, Ramsey reminded the Respondent that Assistant Bar Counsel requested his financial records. On or about March 31, 2011, the Respondent was again reminded that Assistant Bar Counsel requested that he provide financial records. The Respondent failed to provide the financial records requested by Bar Counsel. The Respondent's failure to produce the requested records constituted a violation of MRPC 8.1 (b). This Rule is interpreted to require an attorney to respond to letters or telephone calls from a disciplinary authority without the use of a subpoena. Attorney Grievance Commission v. Fezell, 361 Md. 234, 248-249, 760 A. 2d 1108, 1115-1116 (2000).

* * * *

"This Court finds by clear and convincing evidence that the Respondent violated BOP § 10-306 when he intentionally used trust funds for unauthorized purposes. Scott testified that the Firm's trust account was used to hold prepaid fees, and when fees were earned they were deposited to the Firm's operating account. The Respondent and Scott then received draws from the operating account on the 15th and 30th of the month. Scott testified that funds were not disbursed from the trust account directly to either him and/or Respondent.

"This Court finds by clear and convincing evidence that on two occasions in November 2009, on one occasion in December 2009, and twice in May 2010, the Respondent transferred funds from the trust account directly to his personal account. ... Scott testified that the Respondent was not owed funds from the trust account at the time of the transfers. The Respondent admitted that the funds disbursed to his personal account in November and December 2009 were not owed to the Firm. ... The fact that the Respondent paid back the $1,300 disbursement made on May 19, 2010, and Scott replaced the other funds in the trust account when he became aware of the transaction, provides further evidence that neither Respondent, nor the Firm, were entitled or authorized to [] take funds in the trust account at the time of the disbursements.

"In addition, the Respondent offered no evidence that the disbursements were authorized by the clients or earned by the Firm. ... The Respondent's explanation to Scott for the November and December transactions was that he

10

needed the funds to pay debts owed for the purchase of stock options. The uncontroverted testimony is that the Respondent apologized to Scott for transferring the money. The Respondent clearly understood his actions constituted wrongful conduct. The Respondent offered Scott no explanation for the May 2010 disbursements.

"This Court does not find the Respondent's explanations to Bar Counsel for the 2010 transfers credible. The Respondent represented that the $1,300 transfer was mistakenly disbursed from the trust account instead of the Firm's operating account. ... Scott's testimony, the bank records, or the Respondent's brother's interview does not support the Respondent's explanation. The Respondent's explanation for the $2,000 transfer was that he believed those funds represented $2,000 cash collected for his late brother-in-law's funeral, which he gave to Scott to deposit to the trust account. ... The Respondent's representation that he discussed the $2,000 with two other lawyers was not confirmed. Scott denied any knowledge of the $2,000 in cash, and the Respondent offered no evidence to the contrary. This Court finds as a fact that Respondent lied when he told Ramsey that he gave $2,000 to Scott in a white envelope.

\* \* \* \*

"This Court finds by clear and convincing evidence that the Respondent committed a criminal act that reflects adversely on his honesty, trustworthiness and fitness as a lawyer in other respects. A violation of MRPC 8.4 (b) does not require that the lawyer be prosecuted for, or convicted of, the criminal offense. Attorney Grievance Commission v. Gallagher, 371 Md. 673, 810 A. 2d 996 (2002). As indicated above, the Respondent willfully misappropriated trust funds for his own use, in violation of BOP § 10-306. The intentional unauthorized use of trust funds is a criminal misdemeanor pursuant to BOP § 10-606 (b). ...

"In addition, the Respondent misappropriated the Firm's funds. The October 20, 2009 transaction involving the $1,292.50 check made payable to 'Scott & Kahl, L.L.C.', and the other incidents described by Scott, provide clear and convincing evidence that the Respondent intentionally misappropriated fees intended for the Firm. ... The Respondent also used the Firm's credit/debit card for an unauthorized purpose. ... These transactions provide further clear and convincing evidence that the Respondent engaged in criminal conduct involving theft; and that this conduct is adversely reflected on his honesty,

11

trustworthiness, or fitness as a lawyer in other respects. ...

"The Respondent's use of trust funds for unauthorized purposes; his theft of client and Firm funds; and his failure to disclose these transactions to his partner are dishonest and deceitful. This Court finds by clear and convincing evidence that the Respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by intentionally making misrepresentations to Bar Counsel in order to hide his misappropriations of funds in violation of MRPC 8.4 ( c).

"This Court finds by clear and convincing evidence that the Respondent engaged in conduct prejudicial to the administration of justice in violation of [MRPC] 8.4 (d). Conduct that reflects negatively on the legal profession and sets a bad example for the public at large is prejudicial to the administration of justice. Attorney Grievance Commission v. Goff, 399 Md. 1, 22, 922 A. 2d 554, 566 (2007). Criminal conduct involving misappropriation of trust funds, and conduct involving dishonesty and deceit reflects negatively on the legal profession. The Respondent has, therefore, violated MRPC 8.4 (d).

"The foregoing findings of violations of the MRPC provide clear and convincing evidence that the Respondent violated MRPC 8.4 (a).

\*    \*    \*    \*

"Subject to the informed consent of the client, prepaid fees must be deposited to, and held in a trust account until earned. MRPC 1.15 ( c). This Court finds by clear and convincing evidence that the Respondent failed to hold client-funds deposited in his Firm's attorney trust account, separate from his own property. When the Respondent made the transfers in November and December 2009, and again in May 2010, he violated MRPC 1.15 (a).

"The Respondent also violated MRPC 1.15 (a) when he deposited the check from the Office of the Public Defender to the Firm's trust account, thereby commingling the Firm's earned fees with trust funds. ...

\*    \*    \*    \*

"The Respondent's admissions and Scott's testimony that the Firm's records did not include the disbursements made by the Respondent from the trust account on November 2, 20, 2009; December 7, 2009; and May 19, 25,

and 28, 2010, provide clear and convincing evidence that the Respondent did not properly record the transaction or see that the transactions were recorded by Scott. Therefore this Court finds by clear and convincing evidence that the Respondent violated MRPC 16-606.1.

\* \* \* \*

"The same evidence, which supported the finding that Respondent violated BOP § 10-306, provides clear and convincing evidence that the Respondent used trust funds for unauthorized purpose in violation of Md. Rule 16-609."

Neither the petitioner nor the respondent filed exceptions to Judge Norman's Findings of Fact and Conclusions of Law. Accordingly, we shall "treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." Maryland Rule 16-759 (b) (2) (A). On the other hand, as Rule 16-759 (b) (1) mandates that we do, we "shall review de novo the Circuit Court judge's conclusions of law." That non-deferential review convinces us that the conclusions of law drawn by Judge Norman are supported by the facts found and, so, we shall accept, and adopt, them as established by clear and convincing evidence.

This leaves for determination only the appropriate sanction. On January 18, 2013, the date set for oral argument, we issued a Per Curiam Order immediately disbarring the respondent "for reasons to be stated in an opinion later to be filed." We now state those reasons.

In its Petitioner's Recommendation for Sanctions, the petitioner offered the following rationale for its recommendation that the respondent be disbarred:

13

"Respondent's conduct constituted a betrayal of the trust placed in him by his law partner and clients. Respondent engaged in further dishonest and deceitful conduct in his representations to Bar Counsel in order to cover up his misconduct. Judge Norman found no mitigating factors. Absent compelling extenuating circumstances, intentional misappropriation of another's funds is deceitful and dishonest conduct which justifies disbarment. See e.g. Attorney Grievance Commission v. Carithers, 421 Md. 28, 58-59, 25 A. 3d 181, 199 (2011), citing Attorney Grievance Commission v. Vlahos, 369 Md. 183, 186, 798 A. 2d 555, 556 (2002) (holding that disbarment was proper, where the attorney misappropriated payments from clients of his firm for his own use and took steps to conceal his conduct from his firm) and Attorney Grievance Commission v. Spery, 371 Md. 560, 572, 810 A. 2d 487, 494 (2002) (holding that disbarment was the appropriate sanction where an attorney misappropriated funds from his real estate partners)."

Although not making a sanction recommendation, Judge Norman cited the holdings of Carithers and Vlahos in support of his conclusion that the respondent's conduct "adversely reflected on [the respondent's] honesty, trustworthiness, or fitness as a lawyer in other respects." We agree with this rationale, and emphasize that it is one that is well settled in attorney discipline cases. See Attorney Grievance Comm'n v. Bakas, 323 Md. 395, 404, 593 A.2d 1087, 1092 (1991); Matter of Murray, 316 Md. 303, 308, 558 A.2d 710, 712 (1989); Attorney Grievance Comm'n v. Sparrow, 314 Md. 421, 426-27, 550 A.2d 1150, 1152 (1988); Attorney Grievance Comm'n v. Ezrin, 312 Md. 603, 608-09, 541 A.2d 966, 969 (1988); Attorney Grievance Comm'n v. Nothstein, 300 Md. 667, 687, 480 A.2d 807, 817 (1984); Attorney Grievance Comm'n v. Molovinsky, 300 Md. 291, 296, 477 A.2d 1181, 1184 (1984); Attorney Grievance Comm'n v. Pattison, 292 Md. 599, 609, 441 A.2d 328, 333 (1982); Attorney Grievance Comm'n v. Burka, 292 Md. 221, 225, 438 A.2d 514, 517 (1981);Bar Ass'n v. Marshall, 269 Md. 510, 520, 307 A.2d 677, 682 (1973). Indeed, what we said in

14

Marshall has particular relevance to this case and all cases involving attorney misappropriation:

> "'[I]t is essential that all members of the legal fraternity be strongly and constantly impressed with the truism that in handling moneys and properties belonging to their clients or others that they accept them in trust and are strictly accountable for their conduct in administering that trust, so they dare not appropriate those funds and properties for their personal use. The misappropriation by an attorney of funds of others entrusted to his care, be the amount small or large, is of great concern and represents the gravest form of professional misconduct[,]"'

269 Md. 519, 307 A.2d at 682. Accordingly, we adopted the petitioner's recommendation and disbarred the respondent.