*Attorney Grievance Commission v. Dalton F. Phillips*, Misc. Docket AG No. 47, September Term 2015

**ATTORNEY GRIEVANCE COMMISSION — DISCIPLINE — DISBARMENT —** Respondent, Dalton F. Phillips, violated Maryland Lawyers' Rules of Professional Conduct 3.1, 5.3(c), 5.4(d), 5.5(a), 8.1 (a) and (b), and 8.4(a), (c), and (d). These violations stemmed from Respondent's ratification of the unauthorized practice of law by a nonlawyer, followed by a series of material falsehoods made to Bar Counsel, refusal to provide information requested by Bar Counsel, and the filing of a frivolous motion to quash Bar Counsel's subpoena.

Circuit Court for Prince George's County
Case No. CAE15-30633
Argued: October 13, 2016

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 47

September Term, 2015

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

DALTON F. PHILLIPS

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Barbera, C.J.

Filed: February 22, 2017

On October 13, 2015, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, Dalton F. Phillips. The Petition alleged violations of Maryland Lawyers' Rules of Professional Conduct (the "Rules")[1] 3.1 (Meritorious Claims and Contentions); 5.3 (Responsibilities Regarding Nonlawyer Assistants); 5.4 (Professional Independence of a Lawyer); 5.5 (Unauthorized Practice of Law); 7.5 (Firm Names and Letterheads); 8.1 (Bar Admission and Disciplinary Matters); and 8.4 (Misconduct). Respondent's professional misconduct stems from his ratification of the unauthorized practice of law by a non-attorney, followed by a series of material falsehoods made to Bar Counsel, refusal to provide information requested by Bar Counsel, and other obstruction during the investigation.

Pursuant to Maryland Rules 16-752(a) and 16-757, this Court transmitted the case to the Circuit Court for Prince George's County and designated the Honorable Sean D. Wallace to conduct an evidentiary hearing and make findings of fact and conclusions of law. The hearing was held on April 27, 2016. Respondent testified and presented evidence on his behalf. On May 19, 2016, the hearing judge issued written findings of fact and conclusions of law, concluding that Respondent violated Rule 3.1, 5.3(c), 5.4(d), 5.5(a), 7.5(d), 8.1(a) and (b), and 8.4(a), (c), and (d).

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified, without substantive change, in Title 19 of the Maryland Rules. Because we judge Respondent's conduct against the extant law at the time of his actions, we refer to the MLRPC throughout.

No exceptions were filed. Respondent made no written recommendation regarding sanction; Petitioner recommended disbarment. On October 13, 2016, we heard oral argument, at which only Petitioner appeared. On October 14, 2016, we issued a per curiam order disbarring Respondent. *Attorney Grievance Comm'n v. Phillips*, 450 Md. 246 (2016). We explain in this opinion the reasons for that action. On November 28, 2016, Respondent filed a paper titled "Respondent's Opposition to the Per Curiam Order filed by the Court of Appeals." We have treated the paper as a motion for reconsideration of the Order of Disbarment and, upon review of the motion, we hereby deny it.

I

We summarize here the record and the hearing judge's findings of fact and conclusions of law, supported by clear and convincing evidence.

*A. Initial Misconduct*

Respondent Dalton Phillips was admitted to the Maryland Bar in May 1981. He practiced law for over 35 years. His son, Solon Phillips, graduated from law school in 2008 and in 2011 sought admission to the Maryland Bar. He has not been admitted to the Bar in Maryland or any other jurisdiction.

In August 2009, Solon Phillips caused Articles of Organization to be filed with the Maryland Department of Assessments and Taxation establishing a law firm titled Phillips, Phillips and Dow LLC, to include Respondent, Solon Phillips, and a friend of Solon's, Anthony Dow. It is unclear from the record whether Mr. Dow, evidently a practicing lawyer in Georgia, knew that his name was listed as a member of the firm.

Solon Phillips discussed the formation of the firm with Respondent. Solon Phillips

2

created a law firm insignia; hired an answering service for the firm; reserved a domain name; and created and ordered letterhead that included the firm name, Solon Phillips's home address, the phone number associated with the answering service, and the firm website. He also ordered business cards for himself using the firm insignia and the suffix "Esq.". Respondent agreed to be a member of the firm and reviewed the firm logo prepared by Solon Phillips.

At some point, Solon Phillips met Crystal Meehan through a Facebook support group for individuals experiencing marital discord and became Facebook friends with her. Crystal Meehan is a resident of Indiana. Solon Phillips and Crystal Meehan corresponded in May 2014 regarding unwanted communications that Crystal Meehan had been receiving from her ex-husband's current wife, Abigail Meehan. Solon Phillips prepared for Crystal Meehan a cease and desist letter ordering Abigail Meehan to discontinue all communications with Crystal Meehan, alleging that Abigail Meehan's communications constituted harassment, and threatening legal action. He corresponded over e-mail with Crystal Meehan, provided her with a draft of the letter signed "Solon Phillips JD/MBA", and received her approval of the letter. He then printed the letter on Phillips, Phillips and Dow, LLC letterhead. The content of the final letter was altered in only one regard—Solon Phillips signed Respondent's name to the letter, not his own.

Abigail Meehan received the letter and began attempting to contact the firm. On May 19 and 20, 2014, Abigail Meehan called the number listed in the letter. Someone answered the phone and advised her that, although the attorney was unavailable, she should comply with the letter. On May 20, Solon Phillips e-mailed Crystal Meehan informing her

3

that Abigail Meehan had called the firm's number and asked why a Maryland firm would send a cease and desist letter to her in Indiana. The e-mail exchange between the two included Solon Phillips advising Crystal Meehan that, "[i]f [Abigail Meehan] continues you can go to the police and press charges in IN," specifically, a charge of harassment.

The hearing judge found: "Meanwhile, Abigail Meehan, growing increasingly suspicious of the firm, conducted online searches and eventually obtained the Respondent's phone number." On May 28, Abigail Meehan called and spoke with Respondent for a few minutes regarding the letter. Respondent told her that he knew nothing about the letter and stated that Phillips, Phillips and Dow, LLC was his son's law firm. Following the conversation, Abigail Meehan e-mailed Respondent an image of the letter and its envelope, and requested an e-mail confirming that Respondent did not represent Crystal Meehan.

On May 29, 2014, Respondent e-mailed Abigail Meehan the following:

Dear Ms. Meehan:

Greetings! I am responding to your email regarding a Cease and Desist letter you received from the law firm of Phillips, Phillips and Dow, LLC (the Law Firm). As I had advised you during our brief telephone conversation on May 28, 2014, I was unaware of the Cease and Desist letter you received from the Law Firm. I have been able to confirm, however, that the Law Firm does in fact represent Ms. Crystal Meehan. A junior attorney for the firm sent out the letter you received without advising me of the Law Firm's representation of Ms. Meehan or discussing the letter with me. This is contrary to our practice, which requires my review of every correspondence written on the Law Firm's letterhead and under my name.

Even though the letter was issued without my knowledge, the fact remains that Ms. Crystal Meehan is a client of the Law Firm. If Crystal Meehan is so disturbed by your alleged communications that she hired an attorney to discourage them, in the interest of peace and harmony, I believe that you should seriously consider not contacting her. If you are a person of peace, as I believe you are, you would demonstrate good judgment and wisdom by

4

simply avoiding attempts at correspondence or communication with Crystal Meehan; no good ever evolves from unwelcomed communications.

Understandably, you were upset by the contents of the letter. I suggest that you ruminate on the matter for a few days before doing anything. Sometimes, the most powerful action is no action at all.

Sincerely,

Dalton F. Phillips, Esquire.

On June 17, Abigail Meehan replied in an e-mail to Respondent's May 29 e-mail. She wrote: "Since your firm is representing Ms. Crystal Meehan, I will need you[r] address so that I can send you documents." The e-mail was sent to Respondent and copied Solon Phillips. A few minutes later, Solon Phillips replied to Abigail Meehan's e-mail, copying Respondent and stating:

> Our firm is not representing Ms. Crystal Meehan. Furthermore, your attempts to continue to contact members of our firm is inappropriate and borders harassment.

> This e-mail is to demand all communications with our firm to cease immediately.

> Thank you for understanding.

B. *The Complaint and Bar Counsel's Investigation*

On or about June 8, 2014, Abigail Meehan filed a complaint with the Attorney Grievance Commission regarding Respondent's conduct and enclosed the cease and desist letter and Respondent's May 29 e-mail. She stated the following:

> This attorney sent me a cease and desist letter claiming to represent my husband's ex-wife. When I called him, he told me he had no knowledge of this then later he emailed me telling me someone sent it from his firm and she is represented. How is he sending me legal letters if he isn't licensed to practice in Indiana!

5

By letter dated June 19, 2014, Bar Counsel forwarded a copy of the complaint to Respondent and requested a response. On June 23, 2014, Respondent replied by letter stating:

> After seeing the Firm's name and symbol on the envelope in which the letter was mailed, I wrote Ms. Abigail Meehan the polite email that she has attached to her complaint…. After sending the email, I had an opportunity to review the letter that Ms. Abigail Meehan alleged I had sent to her husband's ex-wife and also speak to a member of our law firm…. I have learned also that our Firm does <u>not</u> represent Ms. Crystal Meehan and no one in the Firm seems to have heard of her prior to this incident…. After I had sent that single email to Ms. Abigail Meehan, for example, I learned that she has contacted our Firm about the matter on several occasions, despite having been told that the firm does not represent Ms. Crystal Meehan. After she persisted in contacting the Firm, she was advised that legal action would be taken against her if she continued her unwelcomed communications. In persistently contacting our Firm, she evinces a remarkably consistent modus operandi.

Bar Counsel wrote Respondent on August 7, 2014. That letter states in pertinent part:

> In the email enclosed with the original complaint, dated May 29, 2014, you state "I have been able to confirm, however, that the Law Firm does in fact represent Ms. Crystal Meehan. A junior attorney for the firm sent out the letter you received without advising me of the Law Firm's representation of Ms. Meehan or discussing the letter with me." Provide the name of the junior attorney you reference in your email to Ms. Meehan.

In a letter dated August 12, 2014, Respondent replied to Bar Counsel's letter. Respondent refused to supply the name of the person he had "assumed" was the person who wrote the letter, stating that he had been wrong in making that assumption: "I was mistaken when I stated that a junior attorney wrote the letter…. No one with whom I am associated knows Ms. Meehan. I am not going to compound my error by naming the person

6

I wrongly suspected."[2]  Respondent added:

> You have also asked how many attorneys are employed with my law firm. In preparation for my retirement from Federal service at the end of this year, I am in the process of establishing a law firm.  It is in the developmental stage and no attorneys have been employed at this time.  I regret that the Commission is asking me to spend time responding to something of which I know nothing and on a Complaint that on its face do [sic] not allege any type of violation.

After receiving this communication, Bar Counsel informed Respondent by letter dated September 24, 2014, that the Attorney Grievance Commission had docketed a complaint against him and Bar Counsel would be investigating.  The letter requested Respondent's availability for a meeting the week of October 20, 2014, and reminded Respondent that Rule 8.1 requires a lawyer to respond to lawful demands for information by a disciplinary authority.

Respondent never replied to this letter with his availability, and Bar Counsel was forced to begin a lengthy and arduous process to get Respondent to talk to her.  On October 3, 2014, Bar Counsel called Respondent to request his availability for a meeting, but Respondent refused to provide any dates before January 2015.  Bar Counsel asked again following some conversation, and Respondent again refused.  When Bar Counsel stated that she would issue a subpoena if necessary and select a date, Respondent evidently hung up the phone.  Bar Counsel followed the conversation with a letter to Respondent memorializing their phone call of earlier that same day and again requesting his availability to give a statement under oath.  She stated that if she did not receive a response by October

---

[2] During his testimony before the hearing judge, Solon Phillips admitted to drafting the letter and signing Respondent's name to it.

7

10, she would choose a date unilaterally.

Respondent replied to Bar Counsel on October 8, 2014, by letter attached to an e-mail. In that October 8 letter, Respondent stated that he had never alleged to anyone that he represented Crystal Meehan, although he acknowledged in the same letter that he "had been mistaken" when he wrote in the May 29, 2014 e-mail he sent to Abigail Meehan "that the Firm represents Ms. Crystal Meehan." Respondent further stated that he did not understand what Bar Counsel was investigating as misconduct on his part, accused Bar Counsel of failing to apprise him of the nature of the investigation in violation of the Commission's guidelines, accused Bar Counsel of bias, and stated that he would not correspond with her again until she explained the nature of the investigation.

That same day, October 8, Bar Counsel e-mailed Respondent explaining that she was investigating the truthfulness of statements he had made to Abigail Meehan and Bar Counsel, his failure to respond to Bar Counsel's requests for information, and whether he had assisted Solon Phillips in the unauthorized practice of law. Bar Counsel identified the Rules this conduct could violate and again requested dates for Respondent to provide a statement under oath. Although Bar Counsel waited a week, Respondent did not reply.

On October 16, 2014, Bar Counsel e-mailed again requesting dates and offering to begin as early as 7:30 AM to avoid interfering with Respondent's work schedule. On October 17, Respondent replied with two e-mails and an attached document denying any wrongdoing and threatening suit against the Commission and Bar Counsel individually. Respondent did not provide any dates of availability.

Bar Counsel e-mailed twice more, requesting dates of availability and offering to

8

obtain Respondent's statement in Bowie, Maryland, closer to his residence. Respondent did not reply to those e-mails. On October 20, 2014, after obtaining permission from the Chair of the Attorney Grievance Commission, Bar Counsel issued a subpoena requiring Respondent to appear at a court reporter's office in Bowie on November 20, 2014, at 10:00 AM to make a statement under oath.

On November 8, 2014, Respondent filed a motion to quash the subpoena arguing that the Commission had refused to advise him of the alleged misconduct that was the subject of the investigation. Bar Counsel opposed the motion.

Although Respondent did not have a protective order and had been served with a subpoena, he did not appear for the statement under oath that was scheduled for the morning of November 20, 2014. That same afternoon, a judge of the Circuit Court for Prince George's County denied the motion, stating: "The court does not find good cause or reason to quash the subpoena or grant a protective order."

Upon learning on the afternoon of November 20, 2014, that the motion to quash had been denied, Bar Counsel e-mailed Respondent later that same afternoon requesting dates and providing four potential dates in December. Respondent again refused to provide dates before January and specifically alleged a conflict on December 17, but refused to give the nature of the conflict; instead he offered dates in January. Bar Counsel accepted January 7 and scheduled the statement under oath to be taken in Bowie.

C. *The Statement Under Oath*

Respondent appeared for the statement under oath. He replied to many questions that he "did not recall" or did not know, including questions asking when Solon Phillips

9

graduated from law school and the nature of his employment. Bar Counsel requested Solon Phillips's phone number from Respondent. Respondent stated that he did not know the number and, unless Solon Phillips granted him permission to provide it, he would not give it to Bar Counsel. Bar Counsel then requested contact information for Anthony Dow (the third named individual on the firm's letterhead), and Respondent stated that he did not have it and would not ask Solon Phillips for the information. Respondent stated that he did not know who had written and sent the cease and desist letter. Respondent initially denied ever seeing the June 17 e-mail from Solon Phillips to Abigail Meehan that copied Respondent. After Bar Counsel pointed out that he was copied, he altered his response to a statement that he did not "recollect seeing it." Respondent also stated he did not know the corporate structure of the firm.

The hearing judge made the following findings concerning Respondent's statement under oath:

> The Court finds that the Respondent knowingly and intentionally testified falsely during his statement under oath. Specifically, the Court finds the Respondent testified falsely that he did not know the corporate structure of the law firm. The undisputed evidence is that, as of May 29, 2014, the Respondent knew that the firm was a limited liability company and that he had supervisory authority over the "junior" associate(s). The Court finds that the Respondent testified falsely that he "did not recall" and did not "know" that the firm ever had any client and that he "was not involved." The undisputed evidence is that, as of May 29, 2014, the Respondent knew as he stated in his email that the firm represented Crystal Meehan, that he had supervisory authority over the junior associate(s) and that there was an established protocol for the communications from the firm.

> The Court finds that the Respondent testified falsely that he did not receive or review the June 17, 2014 email from Solon Phillips to Abigail Meehan that was cc'd to him. The undisputed evidence is that, as of June 23, 2014, the Respondent knew that Solon Phillips had advised Abigail Meehan "that

10

legal action would be taken against her if she continued her unwelcomed communication [with the firm]."

Finally, the Court finds incredible and rejects Respondent's testimony that he was unaware that his son was not admitted to practice law in Maryland.

(Internal citations omitted).

## D.  The Hearing Judge's Conclusions of Law

Based upon the record and the above-summarized findings of fact, the hearing judge concluded, by clear and convincing evidence, that Respondent violated MLRPC 3.1, 5.3(c), 5.4(d), 5.5(a), 7.5(d), 8.1 (a) and (b), and 8.4(a), (c), and (d).

## E.  Aggravating Factors

The hearing judge found that four among the list of aggravating factors enumerated in the American Bar Association Standards for Imposing Lawyer Sanctions[3] existed in this

---

[3] We regularly look to the ten aggravating factors enumerated by the American Bar Association Standards for Imposing Lawyer Sanctions in determining the appropriate sanction. *See*, *e.g.*, *Attorney Grievance Comm'n v. Sperling*, 434 Md. 658, 676 (2013); *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 176-77 (2010); *Attorney Grievance Comm'n v. Harris*, 403 Md. 142, 167-68 (2008).  Those factors are:
  (1) whether there are prior disciplinary offenses;
  (2) whether the attorney acted with a dishonest or selfish motive;
  (3) whether there is a pattern of misconduct;
  (4) whether there are multiple offenses;
  (5) whether there is bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
  (6) whether there was a submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
  (7) whether the attorney refused to acknowledge the wrongful nature of conduct;
  (8) the vulnerability of victim;
  (9) whether the attorney has substantial experience in the practice of law; and
  (10) whether he or she displayed indifference to making restitution.

case:

> The Respondent has engaged in bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with repeated requests for information, and by making misrepresentations during Bar Counsel's investigation. Factors (5) and (6). The Respondent has shown a complete lack of remorse and refusal to acknowledge the wrongful nature of his conduct. Factor (7). Finally, the Respondent has substantial experience in the practice of law having been admitted 35 years ago. Factor (9).

II

*Standard of Review*

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Good*, 445 Md. 490, 512 (2015) (citation omitted). We accept the hearing judge's findings of fact unless we determine that those findings are clearly erroneous. *Id.* "A hearing judge's factual finding is not clearly erroneous if there is any competent material evidence to support it." *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 169 (2014) (citation omitted). We ordinarily defer to the credibility determinations of the hearing judge, because the "hearing judge is in the best position to evaluate the credibility of the witnesses." *Id*. at 181 (internal quotation marks and citation omitted). Neither party filed exceptions to the hearing judge's findings of fact. Those findings are fully supported by clear and convincing evidence in the record; we therefore accept those findings as established. *See Attorney Grievance Comm'n v. Reno*, 436 Md. 504, 508 (2014). Neither party filed exceptions to the hearing judge's conclusions of law. Our review of the hearing judge's legal conclusions is *de novo*, and we render the ultimate decision as to an attorney's alleged misconduct. *Good*, 445 Md. at 512.

Based upon our independent review of the record, we agree with the hearing judge that Respondent violated MLRPC 3.1, 5.3(c), 5.4(d), 5.5(a), 8.1(a) and (b), and 8.4(a), (c), and (d). We are not persuaded that Respondent also violated MLRPC 7.5(d).

*Rule 3.1: Meritorious Claims and Contentions*

Rule 3.1 mandates that:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

"Rule 3.1 is violated when 'the lawyer is unable… to make a good faith argument on the merits of the action taken.'" *Attorney Grievance Comm'n v. Davis,* 375 Md. 131, 163 (2003).

Bar Counsel is granted broad authority to investigate misconduct through Rule 16-712(b). Pursuant to the exercise of that authority, Bar Counsel, if authorized by the Attorney Grievance Commission to do so, may

> issue a subpoena to compel the attendance of witnesses and the production of designated documents or other tangible things at a time and place specified in the subpoena if the Chair finds that (A) the subpoena is necessary to and in furtherance of an investigation being conducted by Bar Counsel pursuant to Rule 16-731[.]

Rule 16-732(a).

In *Unnamed Attorney v. Attorney Grievance Commission,* 409 Md. 509, 522-24 (2009), this Court adopted the test that the Supreme Court established in *United States v.*

*R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991), applicable to grand jury subpoenas, when assessing the reasonableness of a subpoena issued by the Attorney Grievance Commission. That test is whether the information sought by the subpoena "'will produce information relevant to the general subject' of the Commission's investigation." *Id.* at 524 (quoting *R. Enterprises*, 498 U.S. at 301).

In an "Opposition to Motion to Quash Subpoena and Request for Protective Order" ("motion in opposition") Bar Counsel set forth the details of Respondent's efforts to obstruct Bar Counsel's investigation of Abigail Meehan's complaint. The motion in opposition described Respondent's refusal to respond to Bar Counsel's repeated, yet unsuccessful, efforts to obtain from him the identity of the unnamed "junior attorney" whom Respondent had asserted in his May 29 email to Abigail Meehan had sent the cease and desist letter. Bar Counsel further detailed her repeated efforts to have Respondent provide dates for Bar Counsel to conduct an interview. When Bar Counsel's first such request, made in a letter dated September 24, 2014, went unanswered, Bar Counsel followed with requests on October 3, October 8, and October 16. Respondent persisted in refusing to provide dates before January 2015, and Bar Counsel, after receiving the necessary approval from the Commission, issued the subpoena on October 20, compelling Respondent's presence to provide a statement under oath on November 20, 2014.

The hearing judge concluded:

Respondent violated Rule 3.1 when he filed a frivolous Motion to Quash Subpoena and Request for a Protective Order in the Circuit Court for Prince George's County on or about November 8, 2014. The [m]otion was not supported by fact or law and the evidence supports the conclusions that the Respondent's only purpose in filing the motion was to obstruct Bar Counsel's

14

investigation and delay his statement under oath until January 2015.

We agree with the hearing judge. The record and the hearing judge's findings of fact reflect that Respondent did not raise a good faith argument, based in fact or law, in the motion to quash. Respondent's motion to quash the subpoena, rather than setting forth reasons why the subpoena was unsupported by fact or law, argued instead that Bar Counsel had not fairly apprised Respondent of the misconduct being investigated; he had not engaged in any wrongdoing; and he had spoken truthfully in all prior communications with Bar Counsel. The facts found by the hearing judge do not support those arguments. Regardless, more to the point of the charged Rule 3.1 violation, nowhere in the motion to quash does Respondent lay out an argument, based in fact or law, to support why Bar Counsel was without the authority to issue the subpoena in furtherance of investigating Abigail Meehan's complaint. Rather, as the hearing judge found, Respondent filed the motion to quash for the sole purpose of obstructing the investigation and delaying his having to make a statement under oath.

Given that the motion to quash was not supported by a good faith argument based in fact or law, Respondent filed it in violation of Rule 3.1.

### Rule 5.3: Responsibilities Regarding Nonlawyer Assistants

Rule 5.3(c) provides:

With respect to a nonlawyer employed or retained by or associated with a lawyer:
. . . .
(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the [Rules] if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved[.]

15

The hearing judge concluded that Respondent violated this provision. The hearing judge reasoned:

> Solon Phillips was engaged in the unauthorized practice of law. The Respondent had actual knowledge of the unauthorized practice of law at the time Abigail Meehan emailed him a copy of the cease and desist letter. In his email to Abigail Meehan on May 29, 2014, the Respondent ratified Solon Phillips' unauthorized practice.

We agree and conclude, as did the hearing judge, that Respondent violated Rule 5.3(c).

*Rule 5.4: Professional Independence of a Lawyer*

Rule 5.4(d) provides:

> (d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if:
> (1) a nonlawyer owns any interest therein… ;
> (2) a nonlawyer is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation; or
> (3) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

The hearing judge found that Respondent formed a law firm with Solon Phillips, a nonlawyer; represented to Abigail Meehan in his May 29, 2014 e-mail that, in effect, he was the senior member of the firm and that Crystal Meehan was a client of the firm; and affirmed that the cease and desist letter had been sent by the firm to Abigail Meehan. Based on those findings, we conclude, as did the hearing judge, that Respondent violated Rule 5.4(d).

*Rule 5.5: Unauthorized Practice of Law; Multijurisdictional Practice of Law*

Respondent assisted Solon Phillips in the unauthorized practice of law, in violation of Rule 5.5(a). That rule states: "A lawyer shall not practice law in a jurisdiction in

16

violation of the regulation of the legal profession in that jurisdiction, *or assist another in doing so.*" (Emphasis added). We conclude, as did the hearing judge, that, for the same reasons Respondent violated Rule 5.3, he also violated Rule 5.5(a).

*Rule 7.5: Firm Names and Letterheads*

Rule 7.5(d) requires that "[l]awyers may state or imply that they practice in a partnership or other organization *only when that is the fact*." (Emphasis added). The hearing judge found the following with respect to his rule:

> On May 29, 2014, the Respondent emailed Abigail Meehan and stated that he was a member of the law firm of Phillips, Phillips and Dow. The evidence admitted at trial is clear—the Respondent did not practice law in association with Solon Phillips or Anthony Dow. His statements to Abigail Meehan violated Rule 7.5(d).

We have difficulty concluding, as did the hearing judge, that, because Respondent "did not practice law in association with Solon Phillips or Anthony Dow," he violated Rule 7.5 by suggesting to Abigail Meehan that he did practice with one or both men. Certainly, there is no evidence that Respondent practiced law with Anthony Dow. Perhaps a case could be made that Respondent was a member of the firm in name only, and that his connection with the firm was limited to allowing Solon Phillips to use Respondent's name on the firm's letterhead and later attempting to provide "cover" for his son's unauthorized practice of law. Yet, the hearing judge found that Respondent informed Abigail Meehan in his May 29, 2014 e-mail, in effect, that he was the senior attorney in the firm; Crystal Meehan was a client of the firm; and one of the "junior attorneys" had prepared and sent the cease and desist letter to Abigail Meehan on behalf of Crystal Meehan. We further note that, in her opening statement to the hearing judge, Bar Counsel represented to the hearing

17

judge that the Rule 7.5 charge was brought as an alternative theory—an "either or"—to the charged violations of Rules 5.3, 5.4 and 5.5.

Given that Respondent violated Rules 5.3, 5.4 and 5.5, we do not conclude that Respondent also violated Rule 7.5.

*Rule 8.1: Bar Admission and Disciplinary Matters*

Rule 8.1 requires that a lawyer in connection with a disciplinary matter shall not:

(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

We conclude, as did the hearing judge, that Respondent committed a number of violations of subsections (a) and (b) of this rule. He failed to respond to Bar Counsel's repeated efforts to schedule the statement under oath, and he refused to comply with Bar Counsel's request on August 7, 2014, that he identify the "junior attorney" he had referenced in his May 29 e-mail to Abigail Meehan. Moreover, as later found by the hearing judge, Respondent knowingly made numerous false statements to Bar Counsel when responding to questions during the statement under oath. Respondent testified falsely that he did not know who had written the cease and desist letter and was unaware of either the corporate structure of the firm or the identity of the "junior attorney". Respondent testified falsely that he did not receive or review the June 17, 2014 e-mail Solon Phillips sent to Abigail Meehan, on which Respondent was copied, and that he did not know that Solon Phillips was not admitted to the practice of law in Maryland.

18

*Rule 8.4: Misconduct*

Rule 8.4 provides, in pertinent part:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
….
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

Respondent's false statements to Bar Counsel and failure to provide information upon Bar Counsel's request constituted dishonest and deceitful conduct, in violation of Rule 8.4(c). *See Attorney Grievance Comm'n v. Kahl*, 436 Md. 617, 623-24, 632 (2014) (attorney's failure to provide banking records to Bar Counsel and false statements regarding this failure was dishonest and deceitful conduct). In refusing to speak with Bar Counsel and filing a frivolous motion to quash his subpoena, Respondent obstructed Bar Counsel's investigation in a manner prejudicial to the administration of justice, and his conduct as a whole brings the legal profession into disrepute, in violation of Rule 8.4(d). *See Attorney Grievance Comm'n v. Blum*, 373 Md. 275, 302 (2003) (attorney's conduct making false statements and filing motion to quash bar counsel's subpoena violated Rule 8.4(d)); *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 337 (2013) (attorney's failure to cooperate with Bar Counsel violated Rule 8.4(d)).

Here, each violation of the Rules discussed above is a separate violation of Rule 8.4(a). Respondent's assistance to Solon Phillips in the unauthorized practice of law by ratifying his conduct is also a violation of Rule 8.4(a).

19

## IV

### *The Sanction*

Disbarment is the appropriate sanction for Respondent's multiple violations of the Rules of Professional Conduct. Here, as in all such matters, "[w]e are guided by our 'interest in protecting the public and the public's confidence in the legal profession.'" *Attorney Grievance Comm'n v. Lewis*, 437 Md. 308, 329 (2014) (quoting *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 595 (2005)). Consequently, "our purpose in deciding the appropriate sanction is not to punish the lawyer, but to protect the public, and 'deter other lawyers from engaging in similar misconduct.'" *Id.* (quoting *Pennington*, 387 Md. at 596).

Respondent violated numerous Rules of Professional Conduct, including, among other violations, assisting his son, Solon Phillips, in the unauthorized practice of law; engaging in an ongoing effort to obstruct Bar Counsel's investigation; filing a frivolous motion to quash the subpoena demanding his appearance for a statement under oath; and making numerous false statements under oath, much of which qualifies as prejudicial to the administration of justice. Even were we to put aside his other numerous violations of the Rules, Respondent's intentional and repeated falsehoods when testifying at the statement under oath alone would warrant disbarment. *See*, *e.g.*, *Attorney Grievance Comm'n v. Peters-Hamlin*, 447 Md. 520, 547-49 (2016) (restating the proposition that disbarment ordinarily is the sanction for an intentional violation of MLRPC 8.4(c) (dishonesty)). When added to his violations of MLRPC 3.1, 5.3(c), 5.4(d), 5.5(a), 8.1(a) and (b), and 8.4(a), (c), and (d), disbarment is demanded.

20

It is all the more appropriate that we impose the most severe sanction given the multiple aggravating factors found by the hearing judge and with which we agree: Respondent is an experienced attorney, having practiced law for 35 years; he engaged in bad faith obstruction of the disciplinary proceeding; he made numerous misrepresentations during Bar Counsel's investigation; and he has refused to acknowledge the wrongful nature of his conduct. Respondent's pattern of obstruction in the disciplinary process here, in particular, aggravates his misconduct. *See Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 272-23, 280 (2016) (attorney aggravated his misconduct through bad faith obstruction of the disciplinary proceeding when he refused to comply with Bar Counsel's requests for information and otherwise failed to cooperate in discovery); *Attorney Grievance Comm'n v. Weiss*, 300 Md. 306, 314 (1984) ("[W]e do not hesitate to state that a persistent or more egregious course of conduct in violation of our disciplinary rules may lead to much more severe sanctions.").

For the reasons set forth in this opinion, we issued a per curiam order disbarring Respondent on October 14, 2016.